GLENN *v*. KILLOUGH.

Opinion delivered May 14, 1934.

*Marvin P. Watkins, Charles Q. Kelly* and *Melbourne M. Martin,* for petitioner.

*Donham & Fulk,* for respondent.

BUTLER, J. On the 7th day of February, 1934, Mrs. H. V. Glenn filed a suit against Studebaker Corporation of America and others, the same being case No. 96 in the first division of the circuit court of Poinsett County, Arkansas. Subsequent to the filing of this suit, and after certain preliminary matters were attempted to be had in the second division of the circuit court of that county, Mrs. Glenn filed her petition in this court for a peremptory writ of mandamus in which the Hon. Neil Killough, one of the judges of the circuit court of Poinsett County, was made respondent. The petition alleged the filing of the suit and, in effect, that on March 3, 1934, the defendants gave notice to the plaintiff that on March 5, 1934, there would be presented to the Poinsett Circuit Court defendants' petition and bond for the removal of said cause to the United States District Court; that said cir-

cuit court convened on March 5, 1934, in regular session, and on that date counsel representing the defendants appeared and announced that he desired to be heard upon the petition and bond for removal which he had on that day filed in said court, having given notice to opposing counsel of such intention; that thereupon the Hon. Neil Killough, the presiding judge, advised Marvin P. Watkins, one of counsel for plaintiff, and Martin Fulk, counsel for defendant, that he had no jurisdiction to take any steps in the cause pending in the first division of the Poinsett County Circuit Court, which position was maintained by the court despite the insistence of Fulk that the court should rule upon his petition. Thereupon, the defendants, through said counsel, moved the court for permission to strike from the files of the cause the petition and bond for removal; that the court then directed the clerk to hand to the defendants' attorney said bond and petition, and, pursuant to defendants' motion, took his pen and struck the filing marks from said petition and bond and directed the clerk to permit the withdrawal of the same and surrendered them to defendants' counsel. The petitioner further alleged that the docket and record in said cause do not reflect the motion of the defendant Studebaker Corporation to strike said pleadings and for leave to withdraw their bond and petition for removal, nor do they reflect the order of the court made upon said motion. It is alleged that the motion aforesaid and the order of the court made pursuant thereto results in the entry of the general appearance of the defendants in that cause. The petitioner further alleged that, subsequent to the aforesaid proceedings, to-wit, on March 13, 1934, she presented to the Poinsett Circuit Court, still functioning in regular session, her motion to enter upon the docket in said cause its order made on March 5th permitting the defendants to withdraw the petition and bond for removal and to reflect upon the said docket that the order sought to be entered was made upon motion of defendants for leave to withdraw said petition and bond, and that the same were withdrawn and delivered to defendants' counsel pursuant to his motion. The petitioner further alleged that the docket in the action failed to reflect

the proceedings had by the defendants in said court and that she is entitled to have the facts reflected by the record and to have the Poinsett County Circuit Court take jurisdiction for the purpose of trial; that, while in regular session as aforesaid, she presented to the Hon. Neil Killough, presiding judge of the court and the respondent named in her petition, her motion for judgment by default in said case No. 96, being entitled thereto for the reason that more than twenty days had elapsed since the issuance of the summons and that defendants had appeared generally in the cause, and, having failed to file any pleadings, she was entitled to the judgment prayed and the impaneling of the jury to assess her damage; that said presiding judge refused to take jurisdiction in the cause and neither granted nor denied said motion, although, as above stated, petitioner was entitled to her judgment by default.

Petitioner further alleged that the said presiding judge refused to take jurisdiction in the premises and refused to make any order whatsoever on the motion filed by her, and ''she therefore prays a peremptory writ of mandamus to require said Hon. Neil Killough, judge of the second judicial district and judge presiding over the Poinsett County Circuit Court, to enter the motion of defendants for leave to withdraw their bond and petition for removal to the United States District Court and the order of said court heretofore made permitting the withdrawal of said pleadings and to enter upon the docket in said cause No. 96, styled Mrs. H. V. Glenn v. Studebaker Corporation of America et al., to the end that her cause of action may be properly heard in said Poinsett County Circuit Court''; and in the final prayer further relief was prayed ''that this court direct the respondent herein, as judge presiding over said Poinsett County Circuit Court, to grant petitioner, as plaintiff below, in said cause a default judgment, and to require the said respondent herein to impanel a jury for the purpose of assessing plaintiff's damages; for costs and all other proper relief.''

As an exhibit to the petition, the petitioner filed a copy of her motion for judgment by default made on

March 13, 1934, and the vacation order made and signed on that date by the Hon. Neil Killough, the presiding judge. That order, signed by the judge, is as follows:

"At 9 o'clock A. M. on March 5, 1934, the second division of the Poinsett County Circuit Court convened pursuant to statute, in regular session, at which time the business of said division of court was entered upon and the grand and petit jurors impaneled. At some time during the said day, Hon. Martin K. Fulk, of Little Rock, advised the undersigned as judge presiding at said court that he wished to be heard on a motion filed in the cause of Mrs. H. V. Glenn v. Studebaker Corporation of America et al., number 96, then pending and docketed in the first division of the said Poinsett County Circuit Court, said motion being for a removal of said cause to the United States District Court on the ground of diversity of citizenship and severability of causes; Mr. Fulk at that time advised the undersigned that he had filed his said petition and bond in proper form and had notified the Hon. Melbourne Martin, of Little Rock, opposing counsel, that the said petition for removal would be presented on that date. Mr. Melbourne Martin was not present in person, but it was stated by Hon. Marvin Watkins, of Harrisburg, that he, the said Mr. Watkins, was associated with Mr. Martin in the case, and that Mr. Martin could not be present on the said 5th day of March, but asked that the hearing on the petition be set for another day in the future, and suggested Friday of the same week. Mr. Fulk then stated that he had given proper notice to Mr. Martin and presented to the undersigned the said notice and objected to a continuance of the hearing. The undersigned then suggested to Mr. Watkins and Mr. Fulk that the first division of the Poinsett County Circuit Court was not in session, and that in his view the second division had no jurisdiction to take any step in a cause pending in the first division, unless said cause was transferred to the second division either by agreement of counsel on consent of the judge or court or by an order to that effect by the judge of the court, and that, if Mr. Martin had no objection to the transfer of said cause filed by him in the first division, it could and would be

transferred to the second division by agreement of counsel, and that the petition for removal could then be heard on the said Friday of the first week, or at any other time while the said second division was in session suitable and convenient to counsel. Mr. Watkins then stated that he was not authorized to say whether or not such transfer would be agreeable to Mr. Martin and could make no statement whatever about the matter. The discussion was then continued approximately two hours in order to enable Mr. Watkins to get in touch with Mr. Martin over the telephone. This he was unable to do. The matter was then called up again by Mr. Fulk, and the undersigned advised Mr. Fulk that it was the universal practice in this district that civil causes should not stand for trial or disposition of any sort by the second division of the circuit court unless said cause had been originally filed in said second division, or unless they had been transferred, after filing, from the first division to the second division. The undersigned then suggested to Mr. Fulk that the apparent dilemma in which he was placed could be solved by the removal of the petition, bond and notice from the files of the said first division of the Poinsett Circuit Court, and that under the circumstances the clerk would be directed by the undersigned to permit the said withdrawal of said papers. At that time the clerk had made no docket entry of any sort in regard to the filing of said papers, but the said papers were actually in the file of said cause No. 96, and had been stamped by the clerk with his filing stamp. Upon this suggestion being made and the statement to Mr. Fulk, whether the undersigned was in error in that statement or not, that that would have the same effect as if the petition, bond and notices had not been filed at that time, Mr. Fulk did act upon the suggestion related to him, and the clerk, by direction of the undersigned, removed from said file and cause number 96, the said petition, bond and notice and delivered them to Mr. Fulk in the presence of the undersigned.

"Nothing else in this matter transpired until the 13th day of March, 1934, at which time the said second division of said circuit court was still in session. At that time

Mr. Melbourne Martin, in person, presented his motion to enter the order of the court permitting defendant to withdraw upon its motion the petition and bond for removal to the Federal court, and this motion for default judgment in said cause number 96, at which time it first appeared that the clerk had entered on the civil docket in said cause the following notations:

" 'March 5-34. Petition for removal to Federal court filed. March 5-34. Bond for removal to Federal court filed. March 13-34. Motion to enter order of court permitting defendant to withdraw upon its motion the petition and bond for removing to Federal court filed. March 13-34. Motion for default judgment filed'; that none of said entries were made by the court or by the court's direction or by the undersigned.

"The said undersigned, being of the opinion that the second division of the Poinsett County Circuit Court now in session has no jurisdiction whatever in this civil case, and, under the circumstances outlined above, has refused to either sustain or deny the said motions filed by the plaintiff on this 13th day of March, 1934, as a court, but does, at the request of plaintiff's counsel, make this statement and explanation of his refusal in the form of a vacation order, and, for the reasons stated, refuses to take any jurisdiction of said cause. The defendants were not represented, either in person or by attorney, in any of these matters, except those outlined and detailed on the 5th day of March, 1934, nor was any notice given to defendant or counsel in regard to the motion to enter order or motion for default judgment. During all of the discussion had on this, the said 13th day of March, 1934, the plaintiff was present in person and by her attorneys, Hon. Melbourne Martin and Hon. Marvin Watkins, and also present Dr. A. L. Jobe, of Little Rock, a witness for the plaintiff.

"The clerk of the Poinsett County Circuit Court is directed to enter this order as a vacation order of the Poinsett County Circuit Court, First Division."

To this petition the respondent filed a response by his attorney, admitting the allegations of the petition except denying that the said petition and bond were with-

drawn from the files on motion of defendants' attorney in action No. 96, but alleged that the same were withdrawn on the initiative of the court for the reason that the case had been filed in the first division of the Poinsett Circuit Court, the division in which, pursuant to law, civil actions are due to be filed, and it was the practice that such civil actions were not due to be disposed of by the second division of the court unless said cause had been originally filed therein, or unless it had been transferred after filing, from the first to the second division. The respondent denied that any action had been taken on the 5th of March, 1934, or any orders made, or any notations authorized by the court to be made on the docket or record thereof, and that none of the entries copied in the petition for mandamus were made by the court or by its direction or by the respondent as judge thereof; that it was the opinion of respondent that the second division of said circuit court had no jurisdiction in cause No. 96, and, under the circumstances set out, refused to sustain or deny the motions filed by the plaintiff on March 13, 1934, as a court, but made a written statement and explanation of his said refusal in the form of a vacation order which appears in the transcript.

Supporting this motion was the affidavit of Martin K. Fulk, the attorney, who appeared in the Poinsett Circuit Court on March 5, 1934, and supporting the petition is the affidavit of the deputy circuit clerk, which is in effect that the withdrawal of the bond and petition and their delivery to the defendants' counsel were made upon motion of said counsel.

The affidavits of Fulk and of the deputy circuit clerk are in conflict, but we think the facts are settled by the formal written findings of the presiding judge made and signed by him on March 13, 1934, which had been copied herein, and that these findings sustain the contention made by the respondent, to-wit, that the court refused to entertain the petition and bond for removal for the reason that the case was pending in the first division of the Poinsett Circuit Court, and that he, while presiding over the second division of that court, had no jurisdiction to hear and determine any proceedings in cause No. 96 filed in the

first division except in accordance with the procedure pointed out by the statute governing the practice in the second judicial circuit; that this practice was that, where a case was filed in one division, it might be transferred by the judge of that division to the other division, or might be heard by the judge of the division other than the one in which the cause was filed on consent of the parties. It also appears from the response and the written findings of fact made by Judge Killough that on March 5, 1934, both the plaintiff and defendants in cause No. 96 were present and represented in the court by counsel; that the court called the act governing the practice in that circuit to the attention of counsel and announced, upon the defendants' request that he hear the petition for removal, that he would do so if the plaintiff (petitioner) would agree that the cause be lifted from the first division and heard by him in the second division, but to this proposition plaintiff's counsel would not agree.

The majority of the court agree that the prayer of the petition should be denied for the following reasons:

1. The refusal of the plaintiff (petitioner) to agree that the cause be transferred from the First to the Second Division of the circuit court is the reason why this was not done and why Judge Killough did not proceed to determine the question presented by the petition and bond for removal and such as might subsequently follow, and that it would now present an anomalous situation for this court to mandamus the circuit judge and compel him to do those things on petitioner's request, which he would have done had the petitioner, in the first place, agreed that he might. The refusal of the court to take any action in the cause while presiding in the Second Division was brought about by the action of petitioner, herself, and she is therefore in no position to complain of the failure of the court to act, and for that reason her prayer for mandamus should be denied.

2. We judicially know that the court will sit in the First Division on May 14, 1934, and at that time petitioner's case No. 96 is due to be called for trial or other proceeding, whereas the Second Division over which

Judge Killough presides (unless by agreement between himself and Judge Keck he presides over the First Division), will not be in session until a time subsequent to the convening of the court in its First Division. For these reasons whatever order this court might make would serve no useful purpose and courts are not called upon to do vain things. *International Shoe Co.* v. *Wagner*, 188 Ark. 59, 64 S. W. (2d) 82.

3. The majority are also agreed that the petitioner is not entitled to that part of the relief prayed which asks this court to direct the trial court to render a judgment in her behalf by default and to impanel a jury to assess her damage. The ground on which the prayer for this relief is based is that the defendants entered a general appearance when they filed their motion for leave to withdraw the petition and bond for removal from the files of the court for the purpose of refiling in the First Division. In the first place, the finding of the presiding judge negatives this contention and clearly indicates that the filing marks on the petition and bond were stricken out and the papers returned to defendants' counsel on the court's initiative, and not by reason of any motion having been made for that purpose.

In the next place, if, under the circumstances narrated in the petition, response, and in the "vacation order" signed by Judge Killough, defendants had made the motion to withdraw their petition, it is certain that this was for the purpose of presenting it in the First Division, the one in which the cause was pending, their right to have the same heard in the Second Division having been denied without the agreement of plaintiff having been obtained, that agreement being refused by her counsel. So, all that was done was in furtherance of the assertion of the defendants' right to have the case removed, and it was for that purpose that all the proceedings were had.

It is well settled that the filing of a petition to remove a cause from a State to a Federal court does not amount to the entry of a general appearance, and it is especially the case where, as in the case at bar, the peti-

tion recited that appearance was made only for the purpose of presenting the petition; and, as we have seen, if it be granted that the petition was withdrawn on defendants' motion, this was an act, in view of the position taken by Judge Killough, essential to secure a removal of the cause to the Federal court. The special purpose for which the petition was filed would still remain, during all the proceedings, to secure the relief prayed in the petition, and such proceedings would not amount to a general entry of appearance as contended by the petitioner. We have been cited to no authority to sustain her view, but the authorities cited by the respondent support our conclusion and comport with sound reason. In 4 C. J., § 34, p. 1344, the general doctrine is thus stated: "Where a petition for removal does not amount to a general appearance, a motion for leave to withdraw such petition is not a general appearance." As authority for the text the author cites the case of *Bryan* v. *Norfolk, etc. Ry. Co.*, 119 Tenn. 349, 104 S. W. 523. In that case the court notices the argument that the motion to withdraw the petition, not being in pursuance of any federal statute, was a voluntary abandonment of a right under that statute, and amounted to a voluntary appearance, and answered that argument thus: "We do not think this contention is sound. The defendant company, having the acknowledged right to make a special appearance for the purpose of filing a petition for the removal of the cause to the Federal court, might properly appear and withdraw that petition without being charged with a general appearance. It was at least an appearance for a special purpose, whether for the filing of the petition for removal in the first instance or the withdrawal of that petition in the last instance." See also *Flint* v. *Coffin*, 176 Fed. 872; *Coffin* v. *Flint*, 217 U. S. 602, 30 S. Ct. 693.

Mr. Justice SMITH, Mr. Justice McHANEY and the writer are of the opinion that the petition should be denied, not only on the grounds stated above but for reasons which will appear in a concurring opinion. The Chief Justice, Justices HUMPHREYS and KIRBY dissent.

The writ is denied.

SMITH, J., (concurring). I concur in the opinion written by Mr. Justice BUTLER, and agree that the writ of mandamus was properly denied for the reasons there stated. I am also of the opinion that the circuit judge properly construed the practice under act 138 of the Acts of 1911 (General Acts 1911, p. 110), this being the act to provide an additional circuit judge for the Second Judicial Circuit and to regulate the practice in such court.

The Constitution has defined the jurisdiction of circuit courts, and, this being true, the General Assembly may neither increase nor diminish that jurisdiction. But it is equally true that the General Assembly may enact, and should enact, and does enact, legislation regulating the practice in such courts. It is perfectly proper for the General Assembly to provide when and where such courts may sit, and to enact the procedure pursuant to which their jurisdiction may be exercised (*Belford* v. *State,* 96 Ark. 278, 131 S. W. 953), and it has never been questioned that it is the duty of all courts, from the lowest to the highest, to exercise their jurisdiction in conformity with appropriate practice acts. If this were not true, there would be neither uniformity nor certainty in the practice before, and the practice of, the courts, and all procedure would be subject to the caprice of the presiding judge or judges.

Two judges being provided under the act of 1911 in the Second Circuit, instead of one, some recognition of that fact was necessary, and the direction as to procedure there found is proper and valid and indispensable, and constitutes no encroachment upon the jurisdiction of either judge in that circuit. Regulating the practice in and before a court is no encroachment upon or interference with its jurisdiction.

The practice under this act was defined in the case of *Blackstead Mercantile Co.* v. *Bond,* 104 Ark. 45, 148 S. W. 262. There a civil case had been docketed in the second or criminal division without any order of the judge to that effect, and a judgment was rendered for the want of an answer. It was there said that the act provides that the circuit clerks of the counties in that circuit shall assign all civil cases to the first division, and

all criminal cases to the second division, unless "the judges shall deem it expedient to divide said business into other than civil and criminal divisions," which may be done by written order of said judges, but that "it shall not be reversible error that any case is tried in the division to which it has not been specially assigned, and by consent of parties any case pending in any county, or district thereof, may be tried in either division of said court." It was said that the jurisdiction of the court did not depend upon the proper assignment of a case to either division, and that it was not reversible error for any case to be tried in the division to which it had not been assigned. It was said, however, that the fact that a case is assigned to the wrong division, and a litigant was misled thereby to his prejudice, might be sufficient ground for vacating the judgment under the statute which provides that a judgment may be vacated after the lapse of the term "for unavoidable casualty or misfortune preventing the party from appearing or defending." (Section 4431, Kirby's Digest). Section 6290, Crawford & Moses' Digest. That relief was asked in that case, but was denied for the reason that the defendant was advised of facts which put it on notice that a civil case had been docketed in the criminal division, and no surprise was occasioned because of the appearance of the civil case on the criminal docket.

Here the facts are the exact opposite. The case of *Glenn* v. *Studebaker Corporation* did not appear on the docket of the second division then in session. It had not been assigned to that division by consent of parties, nor through the order of the judges, nor through the action of the clerk. The case had been assigned to and properly appeared on the docket of the first division. The presiding judge stated, in his vacation order, copied in the opinion of Justice BUTLER, what the uniform practice had been in that circuit, which was that: "It was the practice that such civil actions were not due to be disposed of by the Second Division of the court unless said cause had been originally filed therein, or unless it had been transferred, after filing, from the First to the Second Division." This practice, said by the presiding

judge to be universal, accords with § 4 of the act of 1911, which requires the circuit clerks to assign all civil cases to the first division and all criminal cases to the second division as soon as docketed unless the judges, by their option and agreement, had otherwise directed, or had, by their written order, provided for a different assignment.

Now, the presiding judge offered to hear and pass upon the defendant's motion to remove the case to the Federal court provided the plaintiff would consent. But the plaintiff did not consent. The court then properly declined to hear and dispose of the motion for the reason that no such case appeared on his docket, the judges had not ordered it assigned there, and the clerk had not assigned it there.

There can be no question about the power of the judge presiding in one division to transfer a case pending in that division to the other division. This is true because he has such a case before him and on his docket. It is, however, a wholly different proposition to say that the judge presiding in one division may reach over and transfer a case not pending before him nor appearing on his docket but in fact pending in the other division, over which the other judge will preside, and remove the case from that docket, or make any order relating to the case while it is pending on the docket of the other division.

It must be remembered that this case was not on the docket of the division over which Judge Killough was presiding, and it could get there only in some manner authorized by law. The transfer could have been made by consent of parties, but the plaintiff refused to consent. Can it be contended that Judge Killough could have made any order in the case until it had in some manner reached his division, whether by order of the judges, the consent of the parties, or the action of the clerk?

A circuit court might transfer a case to the chancery court, or the chancery court might transfer a case to the circuit court, but would it be contended that, because either court then in session had the jurisdiction to try a case pending on the docket of the other, this jurisdiction to try the case conferred the right to reach over to the ·

docket of the other and, without its consent, transfer a case there pending? Has the practice not always been, and should it not always be, to ask the court where the case is pending to transfer it to the other court? The respect due by one court to another, and the preservation of any semblance of orderly procedure, suggests and requires the practice to be followed of having the court before which the case is pending to first make an order transferring it before the other court assumes jurisdiction.

Pulaski County has a circuit court consisting of three divisions, and each of the three judges have identical jurisdiction under the Constitution, but must, or may, the judge sitting in the first or criminal division of that court, hear and dispose of a motion to remove to Federal court a case pending in either the second or third division without having the cause, in some manner known to the law, transferred to the first division? I submit that the act of 1911 contemplates no such practice, and that Judge Killough properly refused to take any action relating to a cause not pending before him.

The practice is well defined that a party, to be entitled to a writ of mandamus, must show a clear legal right to the subject-matter and a lack of other remedy, and it is as equally well defined that where an inferior court has a discretion, and proceeds to exercise it, the discretion cannot be controlled by mandamus; but, if he refuses to act or to exercise such discretion, mandamus lies to put it into motion. *Jones* v. *Adkins,* 170 Ark. 298, 280 S. W. 389. The circuit court did not refuse to act when called upon to do so. The court proposed to pass upon the motion to remove to the Federal court if the cause were transferred to the division over which the judge was presiding, but the plaintiff did not consent. Can the plaintiff now have mandamus to compel the court to act after declining to consent that it might act?

Of course, mandamus will not lie to control the court's discretion. To obtain the relief here asked it must be shown that the court should have acted, but declined to do so, and, as that showing has not been made, the writ

should be denied for that reason. *Miller* v. *Tatum*, 170 Ark. 152, 279 S. W. 1002.

At § 154 of High's Extraordinary Legal Remedies, (3d ed.) p. 171, it is said: "The writ will be refused when its purpose is to compel a court to alter its record, so that it may correspond with the state of facts disclosed by affidavits filed with and made a part of the application for mandamus. And the action of a court in denying a motion to correct the record of its judgment in a cause is so far judicial in its nature, that mandamus will not go to review or to control such action. Nor will it be granted to compel a court to receive a particular plea offered by a party to a cause pending therein, even though the court may have erred in rejecting such plea." For the reasons stated in this standard text, the right of mandamus should be denied.

It is my opinion that the writ should be denied for the reasons here stated, as well as for those stated in the opinion prepared by Justice BUTLER, and I am authorized to say that he and Judge McHANEY concur in the views here expressed.

JOHNSON, C. J., (dissenting). The effect of the majority opinion is that there are two separate and distinct circuit courts in existence in Poinsett County having separate and distinct jurisdictions to be exercised at the will and pleasure of the circuit judge who may happen to preside in these respective circuit courts. If the opinion of this court in *State* v. *Martin*, 60 Ark. 343, wherein the letter "a" was construed to mean "many" was thought to be novel, then I wonder and ponder what the bench and bar will think when we assert that: "The circuit court shall have jurisdiction in all civil and criminal cases, the exclusive jurisdiction of which may not be vested in some other court provided for by this Constitution." Section 11, article 7, of the Constitution of 1874, also provided: "each circuit to be made up of contiguous counties," etc. Section 13, article 7; "also a judge of the circuit court shall be a citizen of the United States," etc. Section 16, article 7, Constitution, provided also: "The judges of the circuit court shall be elected," etc. Section

17, article 7, of the Constitution also: "whenever the office of judge of the circuit court of any county," etc. Section 21, article 7, Constitution also: "the qualified electors of each circuit shall elect a prosecuting attorney," etc. Section 27, article 7, Constitution also: "the circuit court shall have jurisdiction," etc. Section 27, article 7, Constitution also: "appeals from all judgments of the county courts or courts of common pleas when established may be taken to the circuit court under such restriction and regulation as may be prescribed by law." Section 33, article 7, Constitution also: "the judge of the county court shall be the judge of the court of probate and * * * have jurisdiction in matters * * * as is now vested in the circuit court," etc. Section 34, article 7 also: "that in all cases of allowances made for or against counties, cities or towns an appeal shall lie to the circuit court of the county," etc. Section 51, article 7 also: "that in all cases of contests for any county, township or municipal office an appeal shall lie * * * to the circuit court," etc. Section 52, article 7, Constitution, means two or more circuit courts instead of "the circuit court," as appears from a casual reading of the Constitution? It occurs to me that but one construction can be placed upon the language employed in the Constitution as hereinbefore quoted. "The circuit court" does not and cannot be consistently or logically construed to mean two or more circuit courts. The view that the Legislature may create two or more circuit courts to operate in the respective counties of the State is abortive of constitutional mandate. The mere fact that this court held in *State* v. *Martin, supra,* that two or more circuit judges might be provided by the General Assembly to preside in or over a certain circuit court in the State is neither decisive nor persuasive of the question here discussed. The indefinite article "a" which precedes "judge" in the Constitution of 1874 was there determined to be no definite limitation upon the legislative branch of the State government in providing additional judges to preside over the respective circuit courts of the State. Whether the opinion in *Martin* v. *State, supra,* be sound or unsound, logical or illogical,

is not now open for discussion, but the indefinite extension of the doctrine therein announced should be condemned in no uncertain terms. Certainly, no member of the Constitutional Convention of 1874 ever conceived or dreamed that in 1934 this court would hold, in effect, that "the circuit court," as used so many, many times in article 7 of the Constitution of 1874, would be construed to mean more than one circuit court. Just how this construction of the Constitution may be made to fit into other provisions of the instrument is not readily conceivable. How appeals from the county courts, probate courts, justice of the peace courts and municipal courts may be affected is thrown into utter confusion. Will such appeal be prosecuted to the first or second division of these circuit courts? Will prohibition, *quo warranto,* mandamus, injunctions and other remedial writs be returnable to the first or second division of these newly created courts? These questions can not be answered by saying that the Legislature may determine and settle them. Primarily, and until now, jurisdiction of subject-matter has been conferred by the Constitution, and, when so conferred, the Legislature is without power to change or modify it. The circuit court jurisdiction is conferred by § 11, article 7, of the Constitution of 1874, but the jurisdiction of this newly created circuit court is nowhere mentioned or referred to in the Constitution. Just which of these circuit courts will be said to have and hold the great residium of jurisdiction conferred upon the circuit court by constitutional mandate is not pointed out by the majority opinion. *Martin* v. *State, supra,* does not impair the reasoning here set out. There this court expressly said: "The act creates no new office and confers no new jurisdiction, nor does it in any manner change or take away any jurisdiction already conferred by the Constitution." In contradiction of the doctrine thus announced, the majority is now holding that a new office is created; that a new jurisdiction is conferred which changes and takes away the jurisdiction conferred by the Constitution of 1874. The legislative act creating a second judge for the first judicial district is of no

greater importance than that which creates the judge for the sixth judicial district, which was construed in *Martin* v. *State, supra,* and I cannot conceive the importance or necessity for this apparent distinction.

It certainly and definitely appears from article 7 of the Constitution of 1874 that but one circuit court was created for Poinsett County, but by subsequent acts of the Legislature, as construed in *Martin* v. *State, supra,* it may be presided over by more than one judge. This construction not only meets the exigencies of prevailing conditions, but fits into constitutional mandate. If there is but one circuit court in Poinsett County, which is presided over by one or more circuit judges, then it inevitably follows that Judge Killough erred in refusing to exercise jurisdiction over the subject-matter of the suit pending in the Poinsett Circuit Court while presiding there on March 5, 1934. In the response filed here by Judge Killough, he asserts that the suit pending in the Poinsett Circuit Court and here under consideration was pending in the first division of the Poinsett Circuit Court and that he was presiding over the second division of the Poinsett Circuit Court on March 5, 1934, therefore, he had no jurisdiction of the case. Upon this response, we should direct the issuance of the peremptory writ of mandamus.

This court expressly held in *Gilbert* v. *Shaver,* 94 Ark. 234, 120 S. W. 833, that jurisdiction of subject-matter was purely a question of law, and the chancellor, having decided he had no jurisdiction, should be required to exercise jurisdiction by mandamus in this court. The rule as stated by us in *Gilbert* v. *Shaver, supra,* is not only supported by the great weight of authority on the subject, but I assert, without fear of contradiction, that no authority can be found holding otherwise. See Merrill on Mandamus, §§ 36 and 203. Wood on Mandamus, p. 20.

The majority endeavor to avoid the jurisdictional question here presented by saying: "First, the refusal of the plaintiff (petitioner here) to agree that the cause be transferred from the first to the second division of the circuit court" estops petitioner invoking the jurisdiction of this court. It has ever been the settled law

in this State that jurisdiction of subject-matter can not be conferred by agreement of the parties; therefore, any agreement of the parties would have been vain, useless and futile.

Moreover, no agreement of the parties was necessary because Judge Killough, then presiding, had jurisdiction of the subject-matter of petitioner's suit then pending in the Poinsett Circuit Court. Thus it appears that this "agreement gesture" is without plausibility.

Next, the majority say that "we judicially know that the circuit court will sit in first division on May 14, 1934, etc." Therefore, the issuance of the writ would have no useful purpose and because thereof should be denied. This assertion is palpably erroneous. On the same assumption the writ should never be granted. On the same assumption the writ in *Gilbert* v. *Shaver, supra,* should have been denied, because Judge Shaver might have died, voluntarily retired, or been removed from office before the writ could become effective. The test is and should be, what are the facts at the time the application for the writ is made? In the instant case, when petitioner's application for the writ was made, Judge Killough was asserting his lack of jurisdiction in the premises and, when we judicially determine that he was in error in this assertion, the writ should follow as a matter of right.

The peremptory writ of mandamus should be awarded in the instant case commanding and directing the presiding circuit judge of Poinsett County to assume and exercise jurisdiction over the subject-matter of petitioner's suit pending in the Poinsett County Circuit Court.