Ruth WEINBERG and Milton S. Weinberg, Plaintiffs,

v.

COLONIAL WILLIAMSBURG, INCORPORATED, and Williamsburg Restoration, Incorporated, Defendants.

No. 62–C–1117.

United States District Court
E. D. New York.

Jan. 24, 1963.

On Reargument April 11, 1963.

Solomon M. Lowenbraun, New York City, for plaintiffs.

Patterson, Belknap & Webb, New York City, John V. Duncan, Ambrose L. Cram, Jr., New York City, of counsel, for defendants.

ZAVATT, Chief Judge.

This is an action to recover damages for personal injuries allegedly suffered by the plaintiff Ruth Weinberg when she fell in the roadway outside the Williamsburg Inn in Williamsburg, Virginia, while going to board a bus. The Inn is owned and operated by defendant Williamsburg Restoration, Incorporated (hereinafter referred to as "Restoration") and the bus was owned and operated by defendant Colonial Williamsburg, Incorporated (hereinafter referred to as "Colonial"). The plaintiff-husband's action is for loss of consortium. The action was commenced in the Supreme Court, Queens County, State of New York and removed to this Court on October 15, 1962. Service on both defendants was made by personal service on one Ruth Haupert, an employee of the Jackson Hole Preserve, Inc., at an office at Room 5425, 30 Rockefeller Plaza, New York, N. Y., which it shares with defendant Colonial, among others. Both defendants now move to dismiss this action on the following grounds:

(1) that neither of the defendants has been properly served with process in accordance with the requirements of Fed. R.Civ.P. 4 and Fed.R.Civ.P. 12(b) (5);

(2) that neither of the defendants has sufficient minimum contacts with the State of New York to subject them to the in personam jurisdiction of this Court. Fed.R.Civ.P. 12(b) (2);

(3) that, in the event the defendants are found to be subject to the jurisdiction of this Court, the action be transferred to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).

In opposition the plaintiffs contend:

(1) even if the original service of process was defective, this Court may allow the issuance of new process under 28 U.S.C. § 1448;

(2) in removing this action the defendants, by failing to contest the questions of defective service and lack of personal jurisdiction in the State Court, have in some manner lost their right to raise these questions in this Court;

(3) defendants' contacts with the forum are sufficient to subject them to the jurisdiction of this Court;

(4) defendants have entered a general appearance by joining their objections to jurisdiction with a motion to transfer the action pursuant to 28 U.S.C. § 1404(a).

The service of process would appear to be defective under Fed.R.Civ.P. 4(d) (3) since the person served was not an officer, managing agent, general agent or person authorized to receive service of process on the defendants. Nor would the service appear to be proper under § 229, New York Civil Practice Act, which would suffice for federal purposes under Fed.R.Civ.P. 4(d) (7) if its requirements had been met, since the person served had no connection with either defendant. The Court will not, however, dismiss on this ground since, in a removed action, if the original service was defective, service of new process under 28 U.S.C. § 1448 may be authorized. If such authorization were granted, would the defendants be subject to the in personam jurisdiction of this Court?

### The Activities in New York State of Colonial

Colonial is a charitable corporation (incorporated in Virginia) engaged in restoring Williamsburg, Virginia and its exhibition to the public. With one exception hereinafter noted, the income derived from its operation is banked in Virginia and operational disbursements are made therefrom. Meetings of the Board of Trustees are held in Williams-

burg, Virginia, or in Arkansas, the State of residence of Winthrop Rockefeller, Chairman of the Board. It appears that all of its officers and employees, save those mentioned infra, are residents of Virginia. In order to facilitate visits to the several buildings on its grounds, Colonial owns and operates buses and provides free transportation thereon to visitors.

Colonial has three bank accounts in New York, N. Y.: one is used for petty cash expenses incurred at Room 5425, 30 Rockefeller Plaza; one for the deposit of gifts to Colonial, which are either transferred to the Williamsburg accounts or are invested in securities held in New York; the third is a custody account the purpose of which has not been explained to the Court. Two officers of Colonial reside in New York. One is a vice-president who in recent years has performed no active duties in connection with Colonial. The other is an assistant secretary whose part time duties in connection with Colonial are only of a minor clerical nature. Most of the time of this person is devoted to activities not related to Colonial or Restoration. Mr. Kenneth Chorley, its retired President and a former President of Restoration, is employed by Colonial and Restoration as a consultant to each of said defendants. He is a resident of New Jersey. Only a portion of his activities are connected with Colonial. He has substantial connections with other projects, including employment by other charitable corporations. As consultant to Colonial and Restoration he occupies a portion of the office of Jackson Hole Preserve, Inc., at Rockefeller Plaza. Colonial and Restoration each pay him a salary and Colonial contributes toward the cost of the operation of the said office. Colonial and Restoration pay his salaries by check drawn against funds on deposit in banks in Williamsburg, Virginia. The papers submitted to the Court do not reveal the source of payment by Colonial of its portion of any other office expenses nor do they reveal the source of the funds on deposit in Colonial's petty cash bank ac-

count in New York. The Manhattan Telephone Directory contains two listings under the name Colonial Williamsburg Inc. One is that of the defendant Colonial's office; the other is the number of an independent hotel reservation service which books reservations for a number of hotels, including those of Restoration at Williamsburg.

### The Activities in New York State of Restoration

Restoration, a Virginia corporation, is and has been for many years a wholly owned subsidiary of Colonial. It operates three hotels, including the Williamsburg Inn, a theater and other business properties at Williamsburg. All management functions, other than the activity of its retired President employed by it as a consultant as noted above, take place in Virginia. Restoration avails itself of the services of the independent hotel reservation agency mentioned supra. Reservation requests received by that agency are forwarded to Restoration in Virginia for confirmation. The activities of its consultant, Mr. Chorley, in New York do not appear to be any greater than his activities in connection with Colonial. Restoration, however, pays no part of his office expenses and does not otherwise avail itself of the Rockefeller Center office.

### Have Defendants Waived Question of Jurisdiction?

In determining whether the defendants are subject to the jurisdiction of this Court plaintiffs' contention, that defendants have waived the right to object to adequacy of service or jurisdiction over the person by joining their motions on that ground with one seeking to transfer the action in the event they are found subject to the Court's jurisdiction, must be rejected. Fed.R.Civ.P. 81(c) provides that the Federal Rules of Civil Procedure are applicable to removed actions after removal. Fed.R.Civ.P. 12(b) clearly provides that "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion."

Plaintiffs' contention appears to be that the only way the defendants might have objected to the defective service and the alleged lack of personal jurisdiction would have been to make a special appearance pursuant to Section 237–a of the N.Y.C.P.A. in the Supreme Court, Queens County. In point of fact all that the defendants did in this action in the Supreme Court, Queens County, was to properly file a copy of the removal petition with the clerk of that court. Fed.R. Civ.P. 12(b) provides that motions objecting to jurisdiction over the person, the sufficiency of venue and adequacy of service are properly raised by motion made before pleading. All of defendants' motions are therefore timely and entirely proper.

■ The fact that the New York courts have held that the filing of a removal petition effects a general appearance, thus waiving any objections to defective service and jurisdiction over the person Farmer v. National Life Ass'n, 138 N.Y. 265, 33 N.E. 1075 (1893); Tierney v. Helvetia Swiss Fire Ins. Co., 138 App.Div. 469, 122 N.Y.S. 869, 870 (2d Dep't 1910) has no impact on what is purely a federal procedural matter. The only opportunity a state court would have to make such a determination under current practice would be after the federal court, to which the action was originally removed, has determined that it lacks jurisdiction. See Farmer v. National Life Ass'n, supra. Moreover, the Supreme Court of the United States on several occasions has rejected plaintiff's argument. Freeman v. Bee Machine Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); Cain v. Commercial Publishing Co., 232 U.S. 124, 34 S.Ct. 284, 58 L.Ed. 534 (1914); Wabash Western Ry. v. Brow, 164 U.S. 271, 17 S.Ct. 126, 41 L.Ed. 431 (1896); Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517 (1895). As these authorities indicate, to hold otherwise would be contrary to the terms as well as the spirit of federal removal legislation. Federal removal jurisdiction depends upon acts of Congress and cannot be limited or defeated by state law. The removal legislation seeks to have the entire controversy removed to the federal court in which forum the defendant is entitled to have an adjudication of all questions, jurisdictional as well as those on the merits. That this is the intent of Congress is indicated by the provision of 28 U.S.C. § 1446 which in substance requires the filing of the removal petition within the time when defendant would have been required to answer or otherwise move. The Supreme Court cases cited supra all held that the determination of questions of jurisdiction over the person and adequacy of service are to be determined by the federal court. These cases also relied on the provisions of prior law which provided that after removal "the cause shall then proceed in the same manner as if it had been originally commenced * * *" in the federal court. See Act of Aug. 13, 1888, C. 866, 25 Stat. 433, 434, 435, later 28 U.S.C. § 81. The provision is the apparent forerunner of Fed.R.Civ.P. 81(c) and should be considered in determining its interpretation. See 1A Moore, Federal Practice 1383.

> "By the exercise of the right of removal, the petitioner refuses to permit the state court to deal with the case in any way, because he prefers another forum to which the law gives him the right to resort. * * *" Wabash Western Ry. v. Brow, 164 U.S. at 279, 17 S.Ct. at 128.

Nothing in Fed.R.Civ.P. 4(d) (7) supports a different result. For while it provides that service of process in accordance with the law of the state within which the district court is located is sufficient to meet federal service requirements it appears to be limited in this regard to adequacy of service and would not appear to support such a drastic abridgement of a long recognized federally created right.

*Do Defendants Have Sufficient Minimum Contacts in New York State?*

■ The Court must consider whether or not the defendants are subject to the in personam jurisdiction of

this Court. At the outset a question is presented whether in a removed action this is to be determined by reference to federal or state law. The Second Circuit has held that in a case originally brought in the federal courts the question is one of federal law. Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2d Cir., 1960).[1] There is a division of opinion as to whether this ruling extends to removed cases. Compare Southern New England Distributing Corp. v. Berkeley Finance Corp., 30 F.R.D. 43 (D.Conn. 1962); 1A Moore, Federal Practice 1383 (federal law), with Electronic Race Patrol, Inc. v. National Trailer Convoy, Inc., 191 F.Supp. 364 (S.D.N.Y.1961) (dictum) (state law). In many cases the question may be crucial since a state need not exercise its full sweep of constitutional power to adjudicate claims against foreign corporations. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1951). However, if the federal standards of due process are not met there would appear to be no reason to determine the question under state law which could not extend any further reach of the adjudicative power than that allowed by federal standards of due process. Nothing in Polizzi v. Cowles Magazines, Inc., 345 U.S. 988, 73 S.Ct. 1128, 97 L.Ed. 1397 (1953) prevents a recourse to federal standards of due process in the first instance in a removed case. All that the Polizzi case held was that, for purposes of determining whether a foreign corporation is doing business in a removed case, recourse could not be had to the general venue statute, 28 U.S.C. § 1391. Venue in a removed action under 28 U.S.C. § 1441 is properly laid in the district court for the district and division embracing the place where such action is pending. The federal standards in this area have been expressed as no more than the guiding principles of fairness set forth in the International Shoe case.[2] Lone Star Package Car Co. v. Baltimore & O. Ry. Co., 212 F.2d 147 (5th Cir., 1954); Southern New England Distributing Corp. v. Berkeley Finance Corp., supra; Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778, 779 (E.D. Pa.1961).

██ Thus the question of the jurisdiction of this Court over the defendants is to be determined by looking to the contacts which they have with the State of New York.[3] If they are substantial enough to require them to defend this lawsuit without violating traditional concepts of fairness and substantial justice, this Court has the power to render a judgment for or against them. Goldberg v. Mutual Readers League, Inc., supra. The Court is cognizant of the more recent pronouncements of the Supreme Court in McGee v. International Life Ins. Co.,

1. Contra, Partin v. Michaels Art Bronze Co., Inc., 202 F.2d 541 (3d Cir., 1953) holding state law controlling in originally brought actions.

2. The International Shoe case [International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95] as well as the other leading Supreme Court cases in this area dealt with the limitations of state court jurisdiction under the Fourteenth Amendment. Whether the principles developed in those cases are applicable to the federal courts as an overriding matter of policy or as a possible constitutional rule under the due process clause of the Fifth Amendment has not yet been clearly stated. See Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778, 782 (E.D.Pa.1961).

Compare First Flight Co. v. National Carloading Corp., 209 F.Supp. 730 (E.D. Tenn.1962) suggesting that due process limitations on state power in this regard are applicable to the federal district courts under the Fifth Amendment.

3. A recent district court decision of interest has suggested that the minimum contacts required by International Shoe need only be with the United States as a whole in actions brought in the federal Courts. First Flight Co. v. National Carloading Co., 209 F.Supp. 730 (E.D. Tenn.1962). Counsel have not argued this point to the court and that decision is in no way binding upon this court. Were the court to consider that argument however it would reject it as erroneous.

355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), holding that the making of one insurance contract by mail with a resident was sufficient to give California jurisdiction over the foreign insurance company on a claim arising in California based on that contract; and in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), in which the court indicated that minimal contacts with the state are necessary, but that the convenience or inconvenience to the defendant in litigating in a particular state is not to be considered.

### RESTORATION

In MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832 (2d Cir., 1958), the Second Circuit held that the defendant, a Florida hotel with a New York reservations' office, telephone and bank account, was not subject to suit in the Southern District of New York on an action for defamation occurring on the hotel's premises in Florida brought by a New York resident. The court reasoned that the hotel business is essentially local and that its out of state activities do not themselves produce any revenue. In that case, the defendant's New York activities were characterized as mere solicitation which, without more, could not subject it to the New York federal court's jurisdiction. Reliance was also placed on the fact that the events claimed to create liability did not occur in the state of the forum.

In considering whether defendant Restoration was subject to suit in the Southern District of New York on a tort action based on an injury allegedly incurred on its premises in Virginia, the Honorable John M. Cashin of that court, while indicating that at first blush the suit could be brought under the International Shoe doctrine, considered himself bound by the MacInnes decision, supra, and dismissed the complaint for lack of jurisdiction. Alpert v. Williamsburg Restoration Inc., June 29, 1960, S.D.N.Y. (Unpublished memorandum) Docket No. 60 Civ. 1683. Restoration's New York activities do not appear to have changed since Judge Cashin's decision and on that authority the Court concludes that Restoration is not subject to the jurisdiction of this Court.

### COLONIAL

One of defendant's affidavits suggests that, since the defendant does not engage in any business of a commercial nature in New York, it may not here be subject to suit. However, in this regard a helpful analogy is furnished by the decisions in People v. Jewish Consumptives' Relief Society, 196 Misc. 579, 92 N.Y.S.2d 157 (Sup.Ct.1949) and Zucker v. Baker, 35 Misc.2d 841, 231 N.Y.S.2d 332 (Sup.Ct.1962), in which foreign charitable corporations were held subject to suit in New York. The former case held that, for purposes of doing business, a charitable corporation's business was whatever activities it had been organized for. On that basis the norms prescribed for determining whether commercial corporations are subject to the jurisdiction of a particular forum may apply with equal validity to charitable corporations.

Considering Colonial's activities in New York the Court must express its initial opinion as being one of doubt in regard to their quality and quantity based upon the undisputed facts. Counsel for the plaintiffs has not seen fit to avail himself of the discovery procedures provided in Fed.R.Civ.P. 26–37, to determine the jurisdictional facts General Industries Co. v. Birmingham Sound Reproducers, Ltd., 26 F.R.D. 559 (E.D.N.Y. 1961) but has chosen instead to rely solely on the facts presented by defendants' affidavits. Thus, while it is admitted that the defendant has a bank account in New York for the receipt of gifts, and the gathering of the wherewithal may well be an integral part of the operations of a charitable corporation, Zucker v. Baker, supra, the extent of Colonial's gathering in does not appear. The fact that a petty cash account exists appears relevant only in regard to the activities conducted in the office which uses it. Certainly the mere existence of a bank account is not conclusive

as to the fairness of subjecting defendants to suit in this forum. Fremay, Inc. v. Modern Plastic Machinery Corp., 15 A.D.2d 235, 222 N.Y.S.2d 694 (Sup. Ct.1961); River Plate Corp. v. Forestal Land, Timber & Ry. Co., 185 F.Supp. 832 (S.D.N.Y.1960). Compare the "small inactive bank account" in MacInnes, supra, with the "two active bank accounts carrying substantial balances of company funds" in Perkins v. Benguet Consolidated Mining Co., supra. The relationship between these bank accounts, including the custodial securities account and Colonial's New York office has not been made clear. In Perkins v. Benguet Consolidated Mining Co., supra, the Court in determining whether a foreign corporation was subject to suit in a particular forum presented in its ultimate resolve a question of fact to be determined in each case. A helpful, but not conclusive, test is whether the foreign corporation's activities were such as to require it to secure a license and designate a statutory agent upon whom process might be served. This helpful test has not here been met since Colonial is not licensed to do business in New York, has not designated a statutory agent upon whom process might be served nor has the State of New York required such a license. In the Perkins case the Court found the defendant to be subject to suit in Ohio on a cause of action not related to defendant's activities in Ohio, where it had in Ohio engaged in a systematic and continuous operation, including directors' meetings, salary payments, business correspondence, banking, stock transfers, and machinery purchases, 342 U.S. at 445, 72 S.Ct. at 418. In the instant case, salaries are paid from Virginia; no business correspondence is anywhere adverted to as taking place in New York. While the existence of an office and a telephone listing in defendant's name is some indication of activities by defendant in the forum, it is in no wise conclusive. E.g. River Plate Corp. v. Forestal Land, Timber & Ry. Co., supra; Harmony Music Center, Inc. v. Railway Exp. Agcy., Inc., 35 Misc.2d 18, 230 N.Y.S.2d 50 (Sup.Ct. 1961); Kane v. Stockbridge School, 33 Misc.2d 103, 228 N.Y.S.2d 904 (Sup.Ct. 1962). Of greater import would be the uses to which these facilities are put. On this score the record is silent.

Of the two officers resident in New York one, a Vice-President (Colonial has several apparently), performs no duties in behalf of Colonial; the duties of the other, an Assistant Secretary, are part-time, minor and clerical. The fact that these two officers are New York residents is of no particular moment. Fremay, Inc. v. Modern Plastic Machinery Corp., supra. Although the consultant is furnished with an office and phone, in part paid for by Colonial, he is associated with a number of other activities, including employment by other unrelated charitable corporations. On this record, the Court cannot find that the consultant has exercised any considerable management function in defendant's activities. Defendant Colonial's only other activity in New York was the holding of occasional executive committee meetings. In Benson v. Brattleboro Retreat, 103 N.H. 28, 164 A.2d 560 (1960), in which a Vermont personal injury action was brought against a Vermont charitable corporation in New Hampshire, defendant's only recent New Hampshire activities had been the holding of occasional meetings of the Board of Directors. The court held that the holding of directors' meetings did not constitute doing business. However, while the court is of the opinion that the exercise of management functions in a particular locale is a factor to be considered as a contact with the locale for fairness purposes, Perkins v. Benguet Consolidated Mining Co., supra; Glick v. Empire Box Corp., 119 F.Supp. 224 (S.D.N.Y.1954), on the uncontested facts it cannot be said that any considerable part of the management functions of Colonial were performed in New York. The Court of course agrees with Justice Breitel of the New York Appellate Division, Second Department, that: "* * * in this area especially, it is fallacious only to atomize the complex of facts

and then establish that each alone is insufficient to establish presence in the state. * * *" Fremay, Inc. v. Modern Plastic Machinery Corp., 15 A.D.2d at 241, 222 N.Y.S.2d at 700–701. But even viewing the complex of facts so far discussed as a whole, the issue is not at all free from doubt. However, an additional fact is presented which the Court finds sufficient to tip the scales in defendant's favor on this motion. In Robbins v. Benjamin Air Rifle Co., 209 F.2d 173 (5th Cir., 1954), the court indicated that the fact that the suit arises out of conduct outside the state of the forum and entirely unconnected to its activities within the state may be considered in regard to the subjection of a defendant corporation to suit in a doubtful case. Reliance on such a factor appears proper in this Circuit as well. See MacInnes v. Fontainebleau Hotel Corp., supra. It is uncontroverted that neither the alleged liability-causing conduct nor the injury occurred in this State.

However, although the Court has concluded that neither Colonial nor Restoration are subject to the jurisdiction of this Court, the Court is constrained to deny the motion to dismiss and instead exercise its discretion and remand the case to the Supreme Court, Queens County. While Professor Moore is of the opinion that 28 U.S.C. § 1447 (c), which provides that:

> "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case * * *"

is limited to jurisdiction over the subject-matter he is also of the opinion that, if, in a particular case the defendant is not subject to federal jurisdiction but would be subject to state jurisdiction the district court should remand. 1A Moore, Federal Practice 1431, 1434. Certainly in the ordinary case involving foreign corporations, in which jurisdiction over the person is lacking in the federal court, a remand under § 1447(c) would be a futile act due to the fact that federal in personam jurisdiction over foreign corporations cannot be less broad than the state's, but may indeed be broader. Under the former 28 U.S.C. § 80, which authorized a district court to either dismiss or remand if it was satisfied that a removed suit did not really and substantially involve a dispute or controversy properly within its jurisdiction, the Supreme Court in Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 57 S.Ct. 273, 81 L.Ed. 289 (1937), held that the court could remand within its discretion if the defendant was subject to state process but not to federal process. Jurisdiction under the former statute was stated to include jurisdiction over the person. 299 U.S. at 381–382, 57 S.Ct. at 276–277. While the statutory basis of the power of the court to remand a case in which personal jurisdiction is lacking in the federal court but might be obtainable in the state court is not altogether clear, some exercise of judicial discretion in this regard might be drawn from dictum in Gayle v. Magazine Management Co., 153 F.Supp. 861, 867 (M.D. Ala.N.D.1957).

In this case there is a possibility that the New York state courts may be able to exercise a broader reach of jurisdiction than this Court in light of their past decisions holding that the filing of a removal petition constitutes a general appearance. Farmer v. National Life Ass'n, supra; Tierney v. Helvetia Swiss Fire Ins. Co., supra. While this Court doubts that the courts of New York still adhere to this doctrine, Wabash Western Ry. Co. v. Brow, supra, Cain v. Commercial Publishing Co., supra, the question appears to be one which should be determined by the court to which the case is remanded. Accordingly, this action is hereby remanded to the Supreme Court, Queens County, New York for such further proceedings as that court may deem appropriate.

Settle an order consistent herewith on or before ten (10) days from the date hereof.

### On Reargument

On January 24, 1963, there was filed herein the opinion of the court denying

the defendants' motion to dismiss the complaint. The court did not pass upon defendants' motion to transfer this case to the United States District Court for the Eastern District of Virginia because, on the oral argument, the defendants conceded that this court could not so transfer if it lacked jurisdiction over the defendants. No order was entered on the court's decision because of the request of the attorneys for the defendants to withhold entry of such an order pending a motion for leave to reargue. Such a motion has been made and leave to reargue was granted. Upon the reargument the defendants have requested the court (1) to reconsider its decision to remand this case to the Supreme Court, Queens County, New York, from which it was removed and (2) to transfer this case to the United States District Court for the Eastern District of Virginia.

As to this latter request, the defendants cite Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) which they did not cite in support of the original motion. They contend that Goldlawr, *supra,* is authority for the proposition that this court may so transfer this case, despite the court's determination that it lacks jurisdiction over the defendants. It is an open question as to whether Goldlawr, *supra,* applies. There, an action was instituted in a United States District Court, whereas here the action was instituted in a state court. In Goldlawr, venue was improper under § 12 of the Clayton Act, 15 U.S.C. § 22. In the instant case, venue is properly laid in this court. The proper venue on the removal of a diversity case brought in a state court is the United States District Court for the district in which the state court is situated. 28 U.S.C. § 1441; Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331 (1953).

Mr. Justice Harlan, in his dissenting opinion in Goldlawr, *supra,* pointed out that a transfer under 28 U.S.C. § 1406(a) would not be proper in a diversity case where venue is properly laid in the district court from which transfer is sought to another district.

■ Assuming, arguendo, that Goldlawr, *supra,* authorizes the requested transfer, the court would not exercise its authority to do so because it finds that such a transfer would cause great inconvenience to the plaintiffs, their three witnesses as to liability and their two medical witnesses, all of whom reside in this district. 28 U.S.C. § 1404(a); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Deutsch v. Dunne, 197 F.Supp. 907 (E.D.N.Y.1961).

As to the request to reconsider the determination to remand this case, the defendants contend that the three decisions of the Supreme Court of the United States, cited by this court in its opinion of January 24, 1963[1], in effect, have overruled the decisions of the courts of New York holding that the filing of a removal petition constitutes a general appearance in the state court.[2] Those Supreme Court cases, however, were concerned only with the question of whether the filing of a removal petition effects a general appearance in the federal court to which the action was removed. Nor can it be said that the New York courts have abandoned the view that the filing of a removal petition effects a general appearance in the state court if the removed action is remanded. Dicta in two more recent cases suggest that the courts of New York may still adhere to the rule enunciated in Farmer and Tierney, *supra.* See Seeley v. Waterman S.S. Corp., 73 N.Y.S.2d 80 (Sup.Ct.1947) rev'd on other grounds, 274 App.Div. 934, 83 N.Y.S.2d 502 (2d Dep't 1948) and Ray v.

1. Cain v. Commercial Publishing Co., 232 U.S. 124, 34 S.Ct. 284, 58 L.Ed. 534 (1914); Wabash Western Ry. v. Brow, 164 U.S. 271, 17 S.Ct. 126, 41 L.Ed. 431 (1896); Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517 (1895).

2. Farmer v. National Life Ass'n, 138 N.Y. 265, 33 N.E. 1075 (1893); Tierney v. Helvetia Swiss Fire Ins. Co., 138 App. Div. 469, 122 N.Y.S. 869 (2d Dep't 1910).

Fairfield County Trust Co., 18 Misc.2d 808, 186 N.Y.S.2d 347 (Sup.Ct.1959).[3]

The question as to whether the filing of a petition to remove constitutes a general appearance in the state court has been uniformly decided in the negative, since 1929, by courts of other states which have considered the question.[4] While these decisions may raise a question as to whether the New York courts would adhere to their original position were they presented with the question today, this court should not indulge in conjecture as to whether the New York courts would or could adhere to the view expressed in the Farmer and Tierney cases. These are questions which may be raised in the state court upon the remand of this case to the court from which it was removed.

The defendants' motion to transfer is denied. This action is remanded to the Supreme Court, Queens County, New York, for the reasons appearing herein and in the court's original decision in this matter.

Settle an order consistent herewith on or before ten (10) days from the date hereof.

---

3. The New York Civil Practice Act still provides for general and special appearances. Section 237–a thereof provides: " * * * 1. Except as otherwise provided in subdivision two, a defendant may make a special appearance solely to object to the court's jurisdiction over his person. Such objection, whether based on the ground that process or its service is insufficient or that the defendant is a person not subject to the jurisdiction of the court, must be raised by a motion to set aside the service of process or to strike out part of the complaint, as may be appropriate. The objection, if raised in a manner other than that provided in this section or if combined with an objection to the merits, except as otherwise provided in subdivision four, shall be deemed waived."
This section was enacted in 1951.
Section 237 of the New York Civil Practice Act provides: " * * * A voluntary general appearance of the defendant is equivalent to personal service of the summons upon him."
This provision was enacted in 1920 and is still in effect. It derives from former § 424 of the New York Code of Civil Procedure, in effect at the time of the Farmer and Tierney decisions.

4. Glenn v. Killough, 189 Ark. 265, 72 S.W. 2d 216 (1934); Rorick v. Chancey, 142 Fla. 290, 195 So. 418 (1939); Johannsen v. Mid-Continent Petroleum Corp., 227 Iowa 712, 288 N.W. 911 (1939); McCoy v. Watson, 153 Miss. 416, 121 So. 116, suggestion of error denied, 154 Miss. 307, 122 So. 368 (1929); Crabtree v. Aetna Life Ins. Co., 341 Mo. 1173, 111 S.W.2d 103 (1937); Security State Bank of Norfolk v. Jackson Bros., Boesel & Co., 130 Neb. 562, 265 N.W. 747 (1936); Hayes Freight Lines v. Cheatham, 277 P.2d 664, 48 A.L.R.2d 1278 (Okl.1954); Tracy Loan & Trust Co. v. Mutual Life Ins. Co. of N. Y., 79 Utah 33, 7 P.2d 279 (1932).