### ARPAD SZABO v. SMEDVIG TANKREDERI A. S.

### THE OLE BULL.

Civ. No. 61–15.

United States District Court
S. D. New York.
Feb. 6, 1951.

5. 9 Cir., 1938, 97 F.2d 882.

6. 5 Cir., 1941, 119 F.2d 877.

Silas B. Axtell, New York City (Richard Gyory, New York City, of counsel), for plaintiff.

Pyne, Lynch & Smith, New York City, appearing specially, for defendant.

WEINFELD, District Judge.

The defendant moves to vacate and set aside service of the summons and complaint.

The action was instituted by the plaintiff who is a Hungarian national, residing within the State of New York, under the Jones Act, 46 U.S.C.A. § 688.

The defendant is a Norwegian corporation and maintains no office in the State of New York or in the United States. It is the owner of the vessel "Ole Bull" upon which plaintiff claims he sustained the injuries for which he seeks to recover damages. The vessel is registered, licensed and operated under the Norwegian flag with her home port at Stavanger, Norway.

Service was made upon an officer of J. H. Winchester & Co., a New York corporation (hereinafter referred to as Winchester), engaged in business here upon the theory that said corporation is a managing agent within Rule 4(d) (3) of the Rules of Civil Procedure, 28 U.S.C.A.

The basis of the defendant's motion is two-fold: (1) that it does not and has not transacted business within the jurisdiction of this Court, and (2) Winchester was and is not an agent of the corporation nor has it been authorized to accept service of process on behalf of defendant. Substantially the same facts are dispositive of both questions.

On July 31st, 1947, the defendant as owner entered into a five-year time charter of the "Ole Bull" with Chilean Nitrate and Iodine Sales Corp., the charterer. The agreement was executed in New York City on behalf of the defendant by Winchester "as brokers only."

The charter party recites that it is not to be construed as a demise of the vessel to the charterer and that the owner shall provide and pay for all provisions, wages, insurance, necessary stores and fees of officers and is responsible for the maintenance and efficiency of the vessel.

Winchester is an entity separate and apart from the defendant. The defendant's position is that Winchester's functions were limited to negotiating and executing the charter as "brokers only". Winchester, however, from the date the charter party became effective in 1947, has performed and since continues to perform various services on behalf of the defendant here in the State of New York. The charges for hire of the vessel of approximately $23,000 monthly are paid directly by the charterer to Winchester in New York City and deposited in a New York City bank. The captain of the vessel incurs obligations on behalf of the defendant for supplies and other necessaries for the vessel at various ports of call in the United States. His authority to contract such indebtedness is not open to question either under law or by

virtue of the provision in the charter noted above, under which the owner was required to provide and pay for all provisions, wages, necessary stores and maintain the efficiency of the vessel. The Penza, 2 Cir., 9 F.2d 557; 46 U.S.C.A. § 972. These bills after approval by the master are sent on to Winchester in New York City, who pays them against the monies received monthly from the charterer and remits the balance to the defendant in Norway. These functions have been performed by Winchester for almost five years.

It also appears that the plaintiff was engaged for service on the vessel by Winchester at New York City although generally it does not engage in the hiring or payment of the crew or does it handle any cargo arrangements. An affidavit submitted by plaintiff's counsel indicates that the vessel has been in the Port of New York and is again expected here during the course of the year but the papers contain no information as to how many calls have been made to this port. It is uncontroverted that the sole business of the defendant consists of the "Ole Bull" and one other vessel, the "Veni".

Thus the basic question is whether the activities of defendant within New York State are sufficient to manifest its "presence" here and so confer jurisdiction over the defendant, even though no consent to be sued or authorization to an agent to accept service of process has been given. In the case of a corporation "its 'presence' without, as well as within, the state of its origin can be manifested only by [its] activities carried on in its behalf by those who are authorized to act for it. * * * For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, J., in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141." International Shoe Co. v. State of Washington et al., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L. Ed. 95.

The latter case is the most recent pronouncement by the Supreme Court on the subject. It there considered the application of the standards generally applied in determining the question—on the one hand, continuous and systematic activity as supporting presence, and on the other, casual, single or isolated activities as negating such presence. It recognized the difficulty of setting any hard and fast rule. "The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe Co. v. State of Washington et al., supra, 326 U.S. at page 319, 66 S.Ct. at page 159, 90 L.Ed. 95. Thus, each case must be governed by its own facts.

The ownership functions reserved to defendant in the charter were exercised by the master of the vessel, who sent the bills for supplies and maintenance on for payment here in New York City by Winchester. The fact that all such bills were paid here by Winchester, that all moneys due from the charter were paid monthly to Winchester here in New York City over a period of almost five years, that the plaintiff was hired here in New York City through Winchester, all indicate a form of continuous activity here. In fact, the activities of Winchester on behalf of the defendant left little or nothing for it to do each month except to receive net proceeds of the charter hire. Had the defendant been physically present here through its officers what more could it have done in the promotion of its interests in the operation and maintenance of the vessel except to retain directly the proceeds of the transaction?

While a number of cases place emphasis on the frequency and regularity with which a vessel calls at a port, Andrade v. American Mail Lines, D.C., 71 F.Supp. 201; Jenkins v. Lykes Bros. S. S. Co., D.C., 48 F. Supp. 848; Marcum v. Owens-Parks Lumber Co., D.C., 31 F.Supp. 748, this is a relative factor, depending upon the nature of the voyages and the extent of opera-

tions. In this case, for example, the defendant's sole business consists of the operation of the vessel on which plaintiff was injured and one other, and so it would appear that a very substantial portion of its business and activities is carried on for and on behalf of defendant within this state.

A case recently decided by Judge Galston, while not exactly on all fours, has sufficient similarity to be apposite. Neset v. Christensen, D.C., 92 F.Supp. 78, 81. In upholding jurisdiction and service, Judge Galston held: "In the case at bar, the fact that the time charter was made and concluded in the City of New York indicates the presence of an agent of defendant corporation conducting certain activities of the corporation here. Furthermore, plaintiff signed articles of employment here in New York, and the present cause of action arises out of that particular activity and is directly related thereto." In that case, as in the present, the charter party was signed by a "broker". Service, however, was made upon the master of the vessel and not upon the "broker", and there was proof as to the number of calls, which I have already indicated is not necessarily the determining factor, and except for these items the facts otherwise appear to be substantially similar.

That the charterer and not the owner had the right to decide where the vessel was to go, does not preclude a finding that the owner was doing business here especially in view of the provision that there was no demise of the vessel and that the owner was to pay for wages, stores, supplies and the like. Van Horn v. Waterman S. S. Corp., D.C., 71 F.Supp. 347; Neset v. Christensen, supra.

There remains the contention that in any event, service was not made upon an agent as required under Rules of Civil Procedure. The defendant here presses the point that in executing the charter Winchester expressly acted in the capacity of "brokers only". It acknowledges that in the negotiation and execution of the charter Winchester rendered "certain husbandry services such as are customarily performed by steamship brokers" but contends that Winchester was "not a general agent" but that its agency was limited to the specific transaction. In order to effect service on a foreign corporation it is not necessary that it be made on a general agent. Rule 4(d) (3) permits service upon either "a managing [agent] or general agent". Thus the question remaining is: May Winchester be considered a managing agent? Here, too, as on the question of "presence", the facts control. It is a reasonable inference from the nature of its activities, described above, that Winchester was and is a managing agent and its description in the charter party as "broker only" does not detract or destroy the true nature of its relationship to the defendant. Service upon the agent whose activities establish defendant's "presence" is sufficient notice of the suit. Certainly service of the summons and complaint upon Winchester was an appropriate vehicle for communicating notice to the defendant and gives reasonable assurance that the notice will be actual and transmitted to defendant. International Shoe Co. v. State of Washington et al., supra, 326 U.S. at page 320, 66 S.Ct. 154, 90 L.Ed. 95.

The facts establish both the "presence" of defendant and service of summons upon "a managing agent", and, accordingly, the motion to vacate is denied.

Settle order on notice.