FREMAY, INC., Respondent, *v.* MODERN PLASTIC MACHINERY CORP., Appellant.

First Department, December 19, 1961.

*Bernard Solomon* for appellant.

*Jacob Cottin* for respondent.

BREITEL, J. Involved in this appeal is whether a Delaware corporation, which conducts a manufacturing business in New Jersey, may be sued in New York by a Massachusetts corporation for breach of a contract negotiated in New York but executed in New Jersey.

Special Term confirmed a report of the Official Referee, after a hearing before the Referee, which, among other things, held that the Delaware corporation was doing business in New York and that, therefore, there was jurisdiction under the statutes to retain the action. Defendant appeals from the order denying

its motion to dismiss the complaint for lack of jurisdiction under subdivision 1 of rule 106 of the Rules of Civil Practice, following a special appearance.

For reasons to be discussed the order should be reversed, and the matter remanded for a new hearing.

Plaintiff confuses the principles governing jurisdiction of New York courts over actions between foreign corporations not doing business in New York, as limited by the applicable statute, with the conflict of laws rule for choice of substantive law in enforcing contracts, and with the due process doctrine of substantial contact sustaining suability of nonresident or foreign persons or entities. At issue in this case, ultimately, is only the question whether defendant was doing business in New York so that it might be sued in New York under subdivision 4 of section 225 of the General Corporation Law.

The salient facts are:

Plaintiff, a Massachusetts corporation not licensed to do business in New York, sues to recover $16,000 alleged damages for breach of a written agreement. Defendant, a Delaware corporation and also not licensed to do business in New York, had agreed to employ plaintiff and its president to promote and manage the affairs and business of defendant. Certain fixed sums were payable and plaintiff was to receive a percentage of defendant's gross sales. Defendant is licensed to do business in New Jersey where it has an office and factory. It has no office in New York. The agreement was negotiated in New York with at least two officers of defendant corporation who reside in New York City. Plaintiff's signature was affixed to the agreement in New York, but the signature of the defendant, the last act necessary to make the agreement binding, occurred in New Jersey.

The proof, on the hearings, showed that two of defendant's officers who reside in New York have an office for their several businesses in Long Island City in New York. There, on occasion, they have had meetings and conversations, and from there they have sent documents in connection with the affairs of defendant corporation. It also appears that these officers are investors in defendant corporation, and it is but one of a number of businesses in which they have interests. For the most part, however, their Long Island City office is devoted to businesses which have no relationship to defendant corporation or to any of the matters involved in this action. Defendant has a bank account in New York and has borrowed from the bank in which it is a depositor. It also has, however, a bank account in New Jersey

in connection with which it has also made business loans. Defendant has employed a New York attorney. Under circumstances not detailed, it also appears that defendant has made a number of sales of its machinery to customers in New York. The books and records of defendant corporation are not located in New York.

Section 225 of the General Corporation Law provides the circumstances in which an action may be maintained against a foreign corporation by another foreign corporation or by a nonresident. The pertinent subdivisions read as follows:

" 1. Where the action is brought to recover damages for the breach of a contract made within the state, or relating to property situated within the state, at the time of the making thereof.

\* \* \*

" 4. Where a foreign corporation is doing business within this state."

In order, then, for the present action to lie in the courts of this State it must come within either of the above subdivisions.

Plaintiff has argued that the present action comes within both.

At Special Term, with some success, plaintiff argued that under the " grouping of contacts " doctrine under modern conflict rules the internal law of New York applies to the present contract. In this connection it relies upon the leading case of *Auten* v. *Auten* (308 N. Y. 155). Its difficulty is that the doctrine is referable only to the choice of substantive law to be applied to the contract in question (*Auten* v. *Auten, supra,* p. 160; Restatement, Second, Conflict of Laws, Tent. Draft No. 6 [April, 1960], §§ 332–334e, incl. *Comments* and Editorial Notes; 8 N. Y. Jur., Conflict of Laws, §§ 16–17). Also, it is not shown that the result would be any different if the law of New Jersey, Delaware, or Massachusetts were applied.

Nevertheless, assuming, as plaintiff would have it, that the internal law of New York is to be applied to the contract, then the question is whether under such internal law the contract was made in New York. The answer is simply that under New York law (as well as under the law of virtually all, if not all, the Anglo-American jurisdictions) the time and place of making of the contract is established " when the last act necessary for its formulation is done, and at the place where that final act is done " (e.g., *Hyde* v. *Goodnow,* 3 N. Y. 266; *Ohl & Co.* v. *Standard Steel Sections,* 179 App. Div. 637, 639, involving a formal contract negotiated between offices in New

York and Newark, New Jersey and finally signed in New Jersey; Restatement, Contracts, § 74).*

Consequently, applying New York's internal law (and it is noted again that it would make no difference, as the internal law of New York, New Jersey and Massachusetts are undoubtedly the same in this respect) the contract in suit was made in New Jersey when it was signed by the last signatory. Hence, on this ground the action does not fall within subdivision 1 of section 225.

Plaintiff also argued that under the substantial contact doctrine in the due process area, recognized and developed by the Supreme Court of the United States in recent years it is entitled to sue defendant in this State (*International Shoe Co.* v. *Washington*, 326 U. S. 310; *McGee* v. *International Life Ins. Co.*, 355 U. S. 220; *Travelers Health Assn.* v. *Virginia*, 339 U. S. 643; *Perkins* v. *Benguet Mining Co.*, 342 U. S. 437; *Hanson* v. *Denckla*, 357 U. S. 235, 250–255; *Zacharakis* v. *Bunker Hill Mut. Ins. Co.*, 281 App. Div. 487). Because of the similarity in terminology, there is here a confusion between the substantiality of contacts required to justify an action against a nonresident, based on due process principles, with the substantiality of contacts invoked in applying the conflict rule earlier discussed (see *Hanson* v. *Denckla, supra*, p. 254).

The *International Shoe* case, and those which have followed in its wake, have merely developed the doctrine that a State may extend the jurisdiction of its courts to encompass actions against a nonresident with respect to matters arising from significant acts of a nonresident in the State. Thus, in the *International Shoe* case it was held that the State of Washington could prosecute a claim for unemployment insurance liability against a foreign corporation, not " doing business " within the State, with respect to its employees in the State of Washington. So, again, in the *McGee* case, it was held that a State could impose liability to suit within it upon an out-of-State insurance company with respect to a particular insurance policy delivered within the State (cf. *Zacharakis* v. *Bunker Hill Mut. Ins. Co.*,

---

* No rule or authority comes to mind, and none is suggested, that modern conflict rules have changed the rule as to when and where a contract is made, although, assuredly, the modern rules make clear that the place of making is not determinative in the choice of applicable law. Moreover, even if such a development were afoot it is clear enough that section 225 is not expressive of such a development, but makes the place of making determinative of the venue of litigation. And, of course, it has not been suggested, or authority supplied, to equate place of negotiation with place of making, let alone one of several places of negotiation with place of making. Needless to elaborate, such a rule could have enormous consequences.

*supra*). On similar principles a statute, such as section 229-b of the Civil Practice Act, reflects a modern reach of constitutional power in subjecting nonresidents to suit within the State. But, unfortunately for plaintiff, there is no statute in this State which extends the jurisdiction of the courts of this State to an action based upon any contract which may have significant contacts within the State (see Restatement, Second, Conflict of Laws, Tent. Draft No. 3 [April, 1956]; § 84, *Comment e* " Necessity for statute ", § 85; *Comment d* " Necessity for statute "). On the contrary, the relevant statute is limited, as above set forth, to confer jurisdiction only with regard to contracts made in this State or, of course, with respect to foreign corporations doing business within this State.

So, too, on this ground the action does not fall within subdivision 1 of section 225.

It is also argued that defendant corporation is doing business within the State and therefore it is suable under subdivision 4 of section 225. In this connection plaintiff argues that because of the development of the grouping of contacts doctrine as taught in the *Auten* case and the substantial contacts doctrine as laid down in the *International Shoe* case the extent of " doing business " should be correspondingly broadened. The fallacy is that plaintiff is mixing its categories. Nor is this the first time that the question has been raised in this court. On a similar occasion a plaintiff urged that because the constitutional reach of State power had been extended under the *International Shoe* case, the limitations of the " doing business " or " presence " doctrine should be correspondingly liberalized. In *Ames* v. *Senco Prods.* (1 A D 2d 658) this court said: " While it is true that the limitation on service of process on foreign corporations has been lifted to a considerable extent by the United States Supreme Court in *International Shoe Co.* v. *Washington* (326 U. S. 310), the settled rule as to the extent or exercise of our jurisdiction in this State has not been changed. Moreover, there are policy considerations which suggest that any change should be effected by legislation rather than by judicial decision. In that way, circumstances affecting the convenience of commerce may be more generally considered. The statute adopted would provide wider notice to those, ' not doing business within the state ' who, nevertheless, may have occasion to enter the State for the purpose of making contracts here, or having them performed here.'' This would seem to be still applicable. In short, while it is now clear that under constitutional due process principles the Legislature can today broaden the classes of actions in which a foreign corporation may be sued locally,

the New York statutes have not generally been so extended. In a commercial and banking community such as New York City the distinctions may not be blurred and even for legislative action the economic impact of any changes would be carefully weighed.

It is interesting, and relevant to the last matter discussed, that in the new Business Corporation Law, which does not take effect until April 1, 1963, the basic provisions of section 225 have not been changed (Business Corporation Law, § 1314). It is also interesting to consider another new section which excludes, for purposes of requiring in-State licensing, various activities as relevant in determining whether a foreign corporation is doing business in the State (Business Corporation Law, § 1301; cf. Model Business Corporation Act, Ann., § 99 which excludes additional activities as constituting the doing of business).* Some of these factors are precisely those relied upon by plaintiff in urging that defendant corporation does business within the State of New York.

On the foregoing analysis, then, the applicable test as to whether defendant corporation does business within the State of New York is the classic "presence" test, as found in the leading cases (e.g., *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259). Applying that test on the present record there is insufficient proof to sustain jurisdiction.

---

* Section 1301 reads as follows:

"§ 1301. Authorization of foreign corporations.

"(a) A foreign corporation shall not do business in this state until it has been authorized to do so as provided in this chapter. A foreign corporation may be authorized to do in this state any business which it is authorized to do in the jurisdiction of its incorporation, and which may be done in this state by a domestic corporation, but no other business.

"(b) Without excluding other activities which may not constitute doing business in this state, a foreign corporation shall not be considered to be doing business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:

"(1) Maintaining or defending any action or proceeding, whether judicial, administrative, arbitrative or otherwise, or effecting settlement thereof or the settlement of claims or disputes.

"(2) Holding meetings of its directors or its shareholders.

"(3) Maintaining bank accounts.

"(4) Maintaining offices or agencies only for the transfer, exchange and registration of its securities, or appointing and maintaining trustees or depositaries with relation to its securities.

"(c) The specification in paragraph (b) does not establish a standard for activities which may subject a foreign corporation to service of process under this chapter or any other statute of this state."

(L. 1961, ch. 855, eff. April 1, 1963.)

The mere fact that two of the officers of defendant reside in New York is of no particular moment (*Stark* v. *Howe Sound Co.*, 141 Misc. 148, 151, affd. 234 App. Div. 904). The fact that they use their own offices, largely devoted to other businesses, for incidental transactions affecting their status as officers and investors of defendant corporation is of little moment (cf. *Compania Mexicana* v. *Compania Metropolitana*, 250 N. Y. 203). The existence of a bank account in New York by itself is not sufficient (*Hastings* v. *Piper Aircraft Corp.*, 274 App. Div. 435, 438). And, of course, use of a local attorney is no different (*id.*). The mere solicitation of business or the shipment of goods from without the State to local buyers on contracts made elsewhere will not suffice (*Elish* v. *St. Louis Southwestern Ry. Co.*, 305 N. Y. 267, 269; *Yeckes-Eichenbaum, Inc.* v. *McCarthy*, 290 N. Y. 437, 443–444; *Holzer* v. *Dodge Bros.*, 233 N. Y. 216; *Hastings* v. *Piper Aircraft Corp.*, supra, p. 438).

Of course, in this area especially, it is fallacious only to atomize the complex of facts and then establish that each alone is insufficient to establish presence in the State. But even viewing the complex of facts, it is evident that the transactions which have occurred within the State, with insignificant exceptions, relate to the circumstance that the two officers of defendant handle their interests, as such, in defendant corporation in New York rather than that they transact the business of the corporation in this State. The syllabus in the *Compania Mexicana* case (*supra*) with appropriate changes, could succinctly describe the situation here: " The defendants, foreign corporations, whose stock was all owned by another corporation which organized still another corporation for the purpose of handling and selling the produce of its subsidiaries, cannot be said to have come into the State merely because the parent company, exercising domination derived from its stock ownership, gave directions as to the manner in which the defendant's officers in a foreign country should conduct the defendants' affairs. Such directions constitute no part of the corporate business. In giving those directions, the parent company did not act as agent for the subsidiary corporations. It acted only for itself." Moreover, again with insignficant exceptions, the component facts have transient significance and do not display a repetitive pattern characteristic of doing business within the State (cf. Restatement, Conflict of Laws, § 167, *Comment a.*). Consequently, on the present record, and, perhaps because of the confused and erroneous theories upon which the proof was presented and received, there is insufficient to establish that

defendant was doing business in the State under the provisions of subdivision 4 of section 225.

Yet, it may be that plaintiff has other evidence upon which it might rely to establish that defendant corporation does business within the State of New York. Consequently, in the interest of justice plaintiff is entitled to another opportunity to present proof, if it has any, in addition to that which was advanced on the prior hearing.

Accordingly, the order denying defendant's motion to dismiss the complaint for lack of jurisdiction should be reversed, on the law and on the facts, with costs to defendant-appellant and the motion, in the exercise of discretion, remanded for another hearing *de novo* in accordance with the views expressed in this opinion.

BOTEIN, P. J., VALENTE, McNALLY and STEUER, JJ., concur.

Order entered on May 11, 1961, denying defendant's motion to dismiss the complaint for lack of jurisdiction, unanimously reversed, on the law and on the facts, with $20 costs and disbursements to defendant-appellant and the motion, in the exercise of discretion, remanded for another hearing *de novo* in accordance with the views expressed in the opinion of this court.