**UNITED ROPE DISTRIBUTORS, INC., Plaintiff,**

v.

**KIMBERLY LINE and Kim-Sail Ltd., Defendants.**

**KIMBERLY LINE and Kim-Sail Ltd., Third-Party Plaintiffs,**

v.

**SEATRIUMPH MARINE CORP., Third-Party Defendant.**

**No. 89 Civ. 1166 (MGC).**

United States District Court, S.D. New York.

July 8, 1991.

---

Hill Rivkins Loesberg O'Brien Mulroy & Hayden by Alan S. Loesberg, Robert G. Clyne, Carlos E. Rameh, New York City, for plaintiff.

Burlingham Underwood & Lord by Herbert M. Lord, Peter A. McLauchlan, New York City, for defendants/third-party plaintiffs.

Walker & Corsa by Richard A. Corwin, Nicholas Kalfa, New York City, for third-party defendant.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Seatriumph Marine Corporation ("Seatriumph") moves to dismiss the third-party complaint for lack of personal jurisdiction. Plaintiff United Rope Distributors is a Delaware Corporation with its principal place of business in Minnesota. Defendant and third-party plaintiff Kim–Sail, Ltd. ("Kim–Sail") is a Cayman Islands corporation with its principal place of business in New York City.[1] Third-party defendant Seatriumph is a Liberian corporation with its principal place of business in Greece.

## BACKGROUND

At the time of the events giving rise to this action, Seatriumph was the owner of the M.V. Katia. (Third–Party Complaint, ¶ 3.) Seatriumph had chartered the Katia to a Danish company, Copenship A/S, under a head charter in January 1988. (Lord Ex. 2.)[2] Copenship A/S had in turn sub-chartered the vessel to Kim–Sail in October 1988. (Lord Ex. 3.)

In November of 1988, Kim–Sail, through its general agent in New York, Kersten Shipping Agency, Inc., accepted 300,000 bales of twine from Sisalana, S.A. of Salvador, Brazil, for shipment to United Rope

---

1. According to Kim–Sail, Kimberly Line, also named as a defendant, is a trade name used by Kim–Sail and has no separate existence. (Sondheim Aff. ¶ 3.)

2. Exhibits to the affidavits submitted are referred to as ( [*affiant*] Ex. ___.).

Distributors in Superior, Wisconsin. The twine was loaded onto the Katia beginning on November 5, 1988 in Salvador, Brazil. The cargo was never delivered because the Katia sank on or about November 25, 1988.

United Rope Distributors brought this admiralty action against Kim–Sail for damages arising from the loss of the cargo. Kim–Sail impleaded Seatriumph, seeking indemnity or contribution for any liability Kim–Sail is found to have to United Rope Distributors. Seatriumph moves to dismiss the third-party complaint on the ground that this court lacks personal jurisdiction over it.

## THE FACTS

The facts that Kim–Sail submits to show that Seatriumph is subject to personal jurisdiction under CPLR § 301 as a foreign corporation doing business in New York are as follows.

The Katia called at New York in December of 1986 and April of 1987. (Lord Ex. 7.)

In August, 1982, Seatriumph and four other borrowers borrowed $2.5 million from Bank of America International Trust and Savings Association, a California bank. The loan agreement provided for payment to be made in United States dollars at that bank's New York branch. (Lord Ex. 6.) On September 22, 1982, Seatriumph granted a $3.1 million mortgage on the Katia to the bank in order to secure the loan.[3] The mortgage was recorded on that date in a Certificate of Ownership and Encumbrance registered in Seatriumph's name at Liberia's Bureau of Maritime Affairs in New York City. (Lord Ex. 5.) The loan was completely paid off on September 30, 1988. (*Id.*)

Seatriumph's head charter with Copenship required all hire thereunder to be paid in United States dollars. (Lord Ex. 2, Line 58.) More importantly, the head charter also provided that hire was to be paid to the owner's bankers in New York, specifically:

continental bank international, new york branch … 520 madison avenue, new york, n.y. 10022 … attention miss eileen pierson … in favour of m.v. 'katia'

(Lord Ex. 2, Clause 50.)

Michael Petropoulos, the president of Seatriumph, affirmed in affidavits that Seatriumph has never had a bank account in New York. Rather, the bank account designated in the head charter for receipt of hire was held by Richmond Investments Ltd., which had agreed with Seatriumph's managing agent, Global Ship Management Ltd., to receive the Katia's charter hire. (Aug. 30, 1989 Petropoulos Aff., ¶ 6.) Richmond, according to Petropoulos, was not a collection agent for Seatriumph but "simply had an account in New York which Richmond agreed (with Global) could be used from time to time for the receipt of funds." (Oct. 20, 1989 Petropoulos Aff., ¶ 3.) In addition, Petropoulos stated that not all of Seatriumph's hire and freight was paid in New York by wire transfer into Richmond's New York account; Seatriumph also used an account which it held at Continental Bank in Pireaus, Greece as well as Global's account in Pireaus. (Oct. 20, 1989 Petropoulos Aff., ¶ 7–8.) A substantial amount of the Katia's charter hire and freights was paid into the Richmond account in New York. (Deposition at 137.)[4]

Petropoulos admitted at his deposition that he had signed the signature card to open Richmond's account into which Seatriumph's hire was paid. (Deposition at 56–57, 67.) Ownership and control of Richmond, Seatriumph, and Global Ship Management overlap. Although Michael Petropoulos in an earlier affidavit sought to distance himself from Richmond, saying that he "believe[d]" that "Richmond Investments Ltd. was in the business of receiving charter hire for various ships," the di-

---

**3.** According to Michael Petropoulos, the president of Seatriumph, the loan agreement and mortgage were negotiated and executed in Greece with the bank's Pireaus office, and the loan payments were all made to that office, not to New York. (Aug. 30, 1989 Petropoulos Aff. ¶ 7.)

**4.** Citations to the deposition of Michael Petropoulos are indicated "(Deposition at __.)."

rectors of Richmond are Michael Petropoulos, C. Petropoulos (his mother), and D. Petropoulos. (Aug. 30, 1989 Petropoulos Aff., ¶ 6; Deposition at 124–25.) The directors of Seatriumph are Michael Petropoulos, C. Petropoulos, and A. Dousladzi. C. Petropoulos is also Seatriumph's Vice-President. (Deposition at 15, 117–19.) C. Petropoulos and A. Dousladzi are also directors of Global Ship Management. (Deposition at 123.) Michael Petropoulos is not an officer or director of Global Ship Management. (Deposition at 68–69.)

Seatriumph paid expenses out of the Richmond account as well as receiving hire into it. Checks were signed by Michael Petropoulos on the New York account of Richmond, as payments made on behalf of Seatriumph, from December 17, 1987 through December 19, 1988. (Deposition at 72–74.) These checks were payments for various expenses of the Katia. (Deposition at 80–81.) Petropoulos also sent telexes to Continental Bank in New York which were instructions from Richmond to make payments on behalf of Seatriumph. (Deposition at 84–85.) The last one was sent on February 22, 1989. (Deposition at 148.) From December 1987 through February 1989, Richmond wrote 107 checks and made 47 wire transfers on its New York bank account on behalf of Seatriumph. (Deposition Exs. 10, 11.)

Richmond received no consideration for allowing the Katia's managers to use its New York bank account. (Deposition at 78.) Seatriumph last used the Richmond account on February 22, 1989. (Deposition at 148.) The account was closed on instruction from Petropoulos sent on March 20, 1989 (five days after the third-party complaint was served), and the balance in the account was transferred to another account at the same bank in New York, in the name of Med Investments, of which Petropoulos was also a principal. (Deposition of Eileen Pierson at 80–86.)

In addition to these critical financial activities, Kim–Sail points to certain activities by a New York broker, Kersten, involving the Katia or Seatriumph. Kersten, as intermediate broker, negotiated two charters of the Katia in 1987. (Sondheim Exs. 5C, 7.) From April 16, 1987 to July 2, 1987, Kersten collected six installments of a charterer's hire under a time charter of the Katia it had brokered and sent them to the Richmond account at Continental Bank in New York, which it was told was Seatriumph's account. (Sondheim Exs. 6 G, H, I, J, K, L.) Seatriumph responds that Kersten was never its broker or agent but was always an intermediate broker that simply received hire and remitted it per instructions of Seatriumph's Copenhagen broker. (Aug. 30, 1989 Petropoulos Aff., ¶ 9.)

## DISCUSSION

In *Omni Capital Int'l v. Rudolf Wolff & Co.*, the Supreme Court held, in a case arising under a federal statute which did not provide for service of process on a party not an inhabitant of or found within the forum state, that under Fed.R.Civ.P. 4(e), the forum state's long-arm statutes control amenability to suit in the federal courts. 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Although this is a suit in admiralty, and not a federal question action, the same principle applies. Therefore, in the absence of a federal statute authorizing service of process beyond the state, I must look to the New York long-arm statutes to determine whether I can exercise personal jurisdiction over Seatriumph. Fed.R.Civ.P. 4(e). *See also Daval Steel Products v. M.V. Juraj Dalmatinac*, 718 F.Supp. 159 (S.D.N.Y.1989).

Kim–Sail argues that this court has personal jurisdiction over Seatriumph under sections 301 and 302(a)(3) of the New York Civil Practice Law and Rules ("CPLR") and because Seatriumph has consented to be sued in this forum.

■■■ Kim–Sail bears the burden of establishing the court's personal jurisdiction over Seatriumph. *Tuxxedo Network, Inc. v. Hughes Communications Carrier Services, Inc.*, 753 F.Supp. 514 (S.D.N.Y.1990). Because I have not held an evidentiary hearing, Kim–Sail need make only a *prima facie* showing of jurisdiction. *Alexander & Alexander v. Donald F. Muldoon & Co.*, 685 F.Supp. 346, 352 (S.D.N.Y.1988). All

pleadings and affidavits must be construed in the light most favorable to Kim–Sail and all doubts resolved in its favor. *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

In order to be subject to personal jurisdiction under CPLR § 301, a non-resident defendant must be "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). A foreign corporation may be subject to jurisdiction in New York under § 301 when a separate corporation, acting with its authority and for its substantial benefit, carries out activities in New York that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 121 (2d Cir.1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). A New York representative of a non-resident defendant need not be an official agent for its activities to subject the defendant to personal jurisdiction in New York. *Tuxxedo Network, Inc.*, 753 F.Supp. 514 (non-resident defendant "doing business" under § 301 through activities of affiliated corporation in New York). Kim–Sail has made a *prima facie* showing that the systematic financial activities of Richmond in New York in behalf of Seatriumph were carried out with Seatriumph's authority and for its substantial benefit. These activities were sufficiently important to Seatriumph that if it had not had Richmond to perform them, its own officials would have had to perform substantially similar services. Indeed, its own official directed the activities as an official of Richmond.

*Ivanhoe Trading Co. v. M/S Bornholm*, 160 F.Supp. 900 (S.D.N.Y.1957), is an example of the New York contacts of a foreign shipowner which are sufficient to establish that the foreign shipowner is doing business in New York for jurisdictional purposes. In *Ivanhoe*, the subcharterer sued the ship's owner and its time charterer for loss of cargo. The owner, Kronvik, was a Finnish corporation. The court noted that because the ship was under a sixteen-month time charter, the time charterer made all decisions about the ship's activities, so that Kronvik only had to pay for provisions, insurance, and wages and fees of the crew, and maintain the ship and receive its hire. In fact,

[t]o a large extent the accomplishment of the owner's obligations and the enjoyment of its benefits were effected in New York through Skaarup Shipping Corporation since Skaarup was to collect the monthly charter hire, retain a certain amount to be expended at the request of the master of the vessel, distribute commissions due and remit the balance to the owner.

*Id.* at 902. The court held "such activity substantial and continuous enough to support the finding that the owner is present in New York." *Id.*

The only business of Seatriumph was owning and operating the Katia. (Oct. 20, 1989 Petropoulos Aff., ¶ 9.) When it sank, the Katia had been under a time charter to Copenship since January of 1988. Thus, most of Seatriumph's activity, like that of the shipowner in *Ivanhoe*, consisted of paying the expenses of the Katia and receiving its hire. These activities were carried out in New York by Richmond on behalf of Seatriumph.

The Katia's hire constituted substantially all of Seatriumph's profits. Seatriumph required in its head charter with Copenship that all hire be paid in New York City. Indeed, Seatriumph normally required all charterers to pay hire and freight to it via Richmond's account in New York City. (Oct. 20, 1989 Petropoulos Aff., ¶¶ 7, 10.) Thus, Seatriumph, in operating the Katia, arranged through its charters to receive virtually all of its income in New York City. This arrangement, combined with Seatriumph's use of Richmond's bank account to make payments for most of the

expenses of the Katia, constitutes activity within New York sufficient to make Seatriumph subject to personal jurisdiction as a corporation doing business in New York.

Personal jurisdiction over Seatriumph is also supported by *Arpad Szabo v. Smedvig Tankrederi*, 95 F.Supp. 519 (S.D.N.Y.1951), in which an injured seaman brought suit against the shipowner, a Norwegian corporation with no office in New York. The shipowner had time-chartered the ship for five years through a New York broker, Winchester. The court found personal jurisdiction over the shipowner because of the services that Winchester had continuously performed in New York for the defendant. "The charges for hire of the vessel of approximately $23,000 monthly are paid directly by the charterer to Winchester in New York City and deposited in a New York City bank." *Id.* at 520. The bills incurred for the ship's necessities "are sent on to Winchester in New York City, who pays them against the monies received monthly from the charterer and remits that balance to the defendant in Norway." *Id.* at 521. The court held that these activities "indicate a form of continuous activity here." *Id.*

Seatriumph argues that having a New York bank account does not by itself constitute doing business in New York, an unexceptionable proposition. The cases on which Seatriumph relies, however, did not involve bank accounts for the receipt of substantially all of the income of a foreign corporation. *See, e.g., Grove Valve & Regulator Co. v. Iranian Oil Services Ltd.*, 87 F.R.D. 93 (S.D.N.Y.1980) (English corporation's "maintenance of local bank accounts does not, without more, amount to 'doing business' in the state."); *National American Corp. v. Federal Republic of Nigeria*, 425 F.Supp. 1365, 1369 (S.D.N.Y.1977) (Central Bank of Nigeria not doing business in New York; "isolated act of maintaining bank accounts here has been held not to constitute doing business."); *Fremay, Inc. v. Modern Plastic Machinery Corp.*, 15 A.D.2d 235, 222 N.Y.S.2d 694 (1st Dept.1961) ("existence of a bank account in New York by itself is not sufficient" to show the foreign corporation is doing business in New York); *Hastings v. Piper Aircraft*, 274 A.D. 435, 84 N.Y.S.2d 580 (1st Dept.1948) (nonresident manufacturer that solicits no business in New York but has account in local bank not doing business in New York).

Neither does the recent case of *Landoil Resource v. Alexander*, 77 N.Y.2d 28, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990), control. In that case, the New York Court of Appeals held that Syndicate 317, a London underwriter and member of Lloyd's, was not "doing business" in New York simply because Lloyd's held a $9 billion trust fund at Citibank in New York City. The court noted that Syndicate 317 could not deposit or withdraw money from the fund, and that the fund's location in New York was fortuitous. Here, Seatriumph had control over its money held in Richmond's account in New York. In addition, Seatriumph purposefully chose New York as the location to receive its hire.

Seatriumph also argues that even if these facts establish that it was doing business in New York, all activity in New York had ceased by March 15, 1989, when the third-party complaint was filed. Hire was last paid to Seatriumph in the New York account on November 10, 1988, and money was last paid out of that account on behalf of Seatriumph on February 22, 1989, three weeks before the third-party complaint was filed. However, Richmond maintained the account until March 20, 1989, five days after the third-party complaint was filed. On March 30, 1989, under the signature of Petropoulos, Richmond's account was transferred to an account in the same New York bank, in the name of Med Investments, of which Petropoulos was also a principal. Under these circumstances, I find that Seatriumph's ties to New York still existed as of the date of the filing of the third-party complaint.

Finally, requiring Seatriumph to defend this suit in New York does not "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Because I find that Seatriumph is doing business in New York, it is unnecessary to consider the other grounds advanced by Kim–Sail as a basis for personal jurisdiction over Seatriumph.

## CONCLUSION

For the reasons discussed above, Seatriumph's motion to dismiss the third-party complaint for lack of personal jurisdiction is denied.

SO ORDERED.