UNITED ROPE DISTRIBUTORS, INC. and the Switzerland General Insurance Company Ltd. (Schweiz Insurance), Plaintiffs,

v.

KIMBERLY LINE and Kim–Sail Ltd., Defendants.

KIMBERLY LINE and Kim–Sail Ltd., Third–Party Plaintiffs,

v.

SEATRIUMPH MARINE CORP., Third–Party Defendant.

No. 89 Civ. 1166(MGC).

United States District Court, S.D. New York.

Feb. 28, 1992.

Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City, by Alan S. Loesberg, Robert G. Clyne, Carlos E.G. Rameh, Douglas R. Burnett, for plaintiffs.

Burlingham Underwood & Lord, New York City, by Herbert M. Lord, Ellen M. FitzGerald, for defendants/third-party plaintiffs.

Walker & Corsa, New York City, by Richard A. Corwin, Nicholas Kalfa, for third-party defendant.

### OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff United Rope Distributors ("United Rope") is a Delaware corporation with its principal place of business in Minnesota. Defendant and third-party plaintiff Kim–Sail Ltd. ("Kim–Sail") is a Cayman Islands corporation with its principal place of business in New York City.[1] Defendant and third-party defendant Seatriumph Marine Corporation ("Seatriumph") is a Liberian corporation with its principal place of business in Greece. Plaintiff joined Seatriumph as a defendant after my original decision on personal jurisdiction.

Seatriumph moves, pursuant to Rule 3(j) of the Civil Rules of the Southern and Eastern Districts of New York, for reargument of its motion to dismiss the third-party complaint for lack of personal jurisdiction, or, in the alternative, for certification of the order to the United States Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1292(b). Because United Rope also asserts a claim against Seatriumph, I deem Seatriumph's renewed motion to include a request for the same relief against United Rope's complaint.

In denying the initial motion to dismiss, I ruled that Seatriumph was "doing business" in New York within the meaning of section 301 of the New York Civil Practice Law and Rules ("CPLR"). 770 F.Supp. 128 (S.D.N.Y.1991). Upon reconsideration, I adhere to that conclusion, but write again to emphasize that Richmond Investments Ltd. ("Richmond") has never been located in New York. Accordingly, I deny the motion to dismiss in its entirety, but grant the motion for certification.

### BACKGROUND

Familiarity with my earlier opinion is assumed. I will repeat only some of the facts here.

At the time of the events giving rise to this action, Seatriumph was the owner of one ship, the M.V. Katia. (Third–Party Compl. ¶ 3.) In January 1988, Seatriumph chartered the Katia to a Danish company, Copenship A/S, under a head charter. (Lord Ex. 2.)[2] Copenship A/S subchartered the vessel to Kim–Sail in October 1988. (Lord Ex. 3.) In November of 1988, Kim–Sail, through its general agent in New York, Kersten Shipping Agency, Inc., accepted 300,000 bales of twine from Sisalana, S.A. of Salvador, Brazil for shipment on the Katia to United Rope in Superior, Wisconsin. Unfortunately, the cargo never reached its destination because the Katia sank on or about November 25, 1988.

United Rope brought this admiralty action against Kim–Sail for damages arising from the loss of the cargo. Kim–Sail, in turn, impleaded Seatriumph, seeking indemnity or contribution for any liability Kim–Sail is found to have to United Rope.

---

**1.** According to Kim–Sail, Kimberly Line, also named as a defendant, is a trade name used by Kim–Sail and not a separate entity. (Sondheim Aff. ¶ 3.)

**2.** Exhibits to the affidavits submitted are referred to as ( [Affiant] Ex. ___).

Kim–Sail submits the following facts to show that Seatriumph is subject to personal jurisdiction under CPLR § 301 as a foreign corporation doing business in New York:

(1) The Katia called at New York in December of 1986 and April of 1987. (Lord Ex. 7.)

(2) In August 1982, Seatriumph and four other borrowers borrowed $2.5 million from Bank of America International Trust and Savings Association, a California bank. The loan agreement provided for payment to be made in United States dollars at that bank's New York branch. (Lord Ex. 6.) On September 22, 1982, Seatriumph granted a $3.1 million mortgage on the Katia to the bank in order to secure the loan. The mortgage was recorded on that date in a Certificate of Ownership and Encumbrance registered in Seatriumph's name at Liberia's Bureau of Maritime Affairs in New York City. (Lord Ex. 5.) The loan was completely paid off on September 30, 1988. (Id.)

(3) Seatriumph's head charter with Copenship required all hire thereunder to be paid in United States dollars to a bank account in New York, specifically:

continental bank international, new york branch ... 520 madison avenue, new york, n.y. 10022 ... attention miss eileen pierson ... in favour of m.v. 'katia'

(Lord Ex. 2, cl. 50.)

The bank account designated in the head charter for receipt of hire was held in the name of Richmond, a Liberian corporation whose principal place of business is in Pireaus, Greece. Ownership and control of Richmond, Seatriumph, and Global Ship Management Co. ("Global Ship"), Seatriumph's managing agent, overlap. Although Michael Petropoulos, the president of Seatriumph, in an earlier affidavit sought to distance himself from Richmond, saying that he "believe[d]" that "Richmond Investments Ltd. was in the business of receiving charter hire for various ships," the directors of Richmond are Michael Petropoulos, C. Petropoulos (his mother), and D. Petropoulos. (Aug. 30, 1989 Petropoulos Aff. ¶ 6; Petropoulos Dep. at 124–25.) The directors of Seatriumph are Michael Petropoulos, C. Petropoulos, and A. Dousladzi. C. Petropoulos is also Seatriumph's vice-president. (Petropoulos Dep. at 15, 117–19.) C. Petropoulos and A. Dousladzi are also directors of Global Ship. (Petropoulos Dep. at 123.)

A substantial amount of the Katia's charter hire and freights was paid into the Richmond account in New York. (Petropoulos Dep. at 137.) Petropoulos admitted at his deposition that he had signed the signature card to open Richmond's account into which Seatriumph's hire was paid (Petropoulos Dep. at 56–57, 67); that Seatriumph had made withdrawals out of the account; that Petropoulos had signed checks on the account as payments made on behalf of Seatriumph (Petropoulos Dep. at 72–74); and that he had sent the telexes to Continental Bank in New York which contained instructions from Richmond to make payments on Seatriumph's behalf (Petropoulos Dep. at 84–85.).[3] From December 1987 through February 1989, 107 checks and 47 wire transfers were made on the New York bank account on behalf of Seatriumph. (Petropoulos Dep. Exs. 10, 11.) There is no evidence, however, that any of the checks, telexes, or withdrawals originated from New York, rather than Pireaus. (Petropoulos Dep. at 72.)

(4) Kim–Sail points to discrete transactions by a New York broker, Kersten, involving either the Katia or Seatriumph. Kersten, as an intermediate broker, negotiated two charters of the Katia in 1987. (Sondheim Exs. 5C, 7.) From April 16, 1987 to July 2, 1987, Kersten collected six installments of a charterer's hire under a time charter of the Katia that it had brokered, and sent them to the Richmond account at Continental Bank in New York.

---

**3.** Five days after Seatriumph was impleaded by Kim–Sail, on March 20, 1989, the account was closed on instruction from Petropoulos and the balance in the account was transferred to another account at the same bank in New York, in the name of Med Investments, of which Petropoulos was also a principal. (Pierson Dep. at 80–86.)

(Sondheim Exs. 6G, H, I, J, K, L.) It should be noted that Kim–Sail's chartering activities are operated exclusively from Kersten's New York offices. (Sondheim Aff. ¶¶ 3–4.)

(5) Finally, Kim–Sail points to two telexes sent by Seatriumph's managing agent in Pireaus, copies of which have been submitted to the Court, which, Kim–Sail argues, show that Seatriumph had an agent in New York representing its interests. Specifically, a telex dated September 22, 1988 states that "OWNERS NEW YORK AGENT WILL TLRMT USD. 25,000.00 FROM C.B.I. NY," and a telex dated September 23, 1988 states that "OWNERS NEW YORK AGENTS HAVE INSTRUCTED CONTINENTAL BANK INTERNATIONAL, NEW YORK TELEREMIT TODAY USD 25,000.00."

## DISCUSSION

### 1. *CPLR § 301: "Doing Business" in New York*

■ In my original decision, I ruled that Kim–Sail had made a *prima facie* showing that Richmond had engaged in systematic financial activities in New York in behalf of Seatriumph and with Seatriumph's authority. There is no evidence, however, that Richmond has ever maintained an office in New York or any employees physically in New York. Furthermore, it is now clear that all of Richmond's activities in connection with the New York bank account originated from Pireaus. (*See* Pierson Dep. at 144–45.)

Without any physical connection with New York, the relationship between Richmond and Seatriumph cannot itself provide the basis for subjecting Seatriumph to personal jurisdiction in New York. *See Landoil Resources Corp. v. Alexander & Alexander Servs. Inc.,* 77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 739 (1990) (foreign insurance syndicate's interest in trust fund located in New York is insufficient to confer jurisdiction over syndicate where administrator of fund was not present in New York, did not solicit business for defendant in New York, and performed all of its administrative functions from London).

That relationship remains significant, however, because, as did Seatriumph, I treat the Richmond bank account in New York as the account of Seatriumph.

In my earlier opinion, I cited cases in which courts have found a foreign shipowner to be present in New York when an intermediary collected the hire and transmitted it to the shipowner. *See Ivanhoe Trading Co. v. M/S Bornholm,* 160 F.Supp. 900 (S.D.N.Y.1957); *Arpad Szabo v. Smedvig Tankrederi,* 95 F.Supp. 519 (S.D.N.Y.1951). All of these cases, however, involved corporations that were physically present in New York and engaged in activities in addition to the retention and disbursement of funds. For example, in *Ivanhoe Trading Co. v. M/S Bornholm,* the subcharterer sued the ship's owners and its time charterer for loss of cargo. The owners were a Finnish corporation and citizen. The court noted that because the ship was under a sixteen-month time charter, the time charterer made all decisions about the ship's activities. In fact,

> [t]o a large extent the accomplishment of the owner's obligations and the enjoyment of its benefits were *effected in New York* through Skaarup Shipping Corporation since Skaarup was to collect the monthly charter hire, retain a certain amount to be expended at the request of the master of the vessel, distribute commissions due and remit the balance to the owner.

160 F.Supp. at 902 (emphasis added).

In *Arpad Szabo v. Smedvig,* service was made upon the ship owner's broker, which was a New York corporation. The court based its ruling that it could exercise *in personam* jurisdiction over defendant shipowner in New York on the following findings:

> [The broker], however, from the date the charter party became effective in 1947, has performed and since continues to *perform various services* on behalf of the defendant here *in the State of New York....* [B]ills after approval by the master are sent on to [the broker] *in New York City,* who pays them against the monies received monthly from the

charterer and remits the balance to the defendant in Norway.

95 F.Supp. at 520–21 (emphasis added).

The fact that Richmond was not physically present in New York, however, does not dispose of the section 301 issue. The question remains whether, without an agent physically present in New York other than an employee of the bank, Seatriumph's interest in the New York bank account warrants a finding that Seatriumph was present in New York when this lawsuit was filed.

Seatriumph points to cases which hold that maintaining a bank account does not by itself constitute sufficient presence in New York to subject a foreign corporation to personal jurisdiction here. *See Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd.,* 87 F.R.D. 93 (S.D.N.Y.1980) (English corporation's maintenance of local bank accounts does not, without more, amount to doing business in the state); *National Am. Corp. v. Federal Republic of Nigeria,* 425 F.Supp. 1365 (S.D.N.Y. 1977) (Central Bank of Nigeria not doing business in New York); *Weinberg v. Colonial Williamsburg, Inc.,* 215 F.Supp. 633, 639–40 (E.D.N.Y.1963) ("Certainly the mere existence of a bank account is not conclusive as to the fairness of subjecting defendant to suit in this forum."); *Fremay, Inc. v. Modern Plastic Mach. Corp.,* 15 A.D.2d 235, 222 N.Y.S.2d 694, 700 (1st Dep't 1961) ("existence of a bank account in New York by itself" not sufficient to show foreign corporation is doing business in New York); *Hastings v. Piper Aircraft Corp.,* 274 A.D. 435, 84 N.Y.S.2d 580, 583 (1st Dep't 1948) (nonresident manufacturer that solicits no business in New York but has account in local bank not doing business in New York).

These cases are distinguishable, however, because they all concerned bank accounts which were incidental to the business activities of the corporations that owned them. None of these cases involved a bank account for the receipt of substantially all of the income of a foreign corporation and for the payment of substantially all of its business expenses. Kim–Sail

rightly notes that the bank account in this case represents a more substantial voluntary activity in New York than is found in the other New York cases. The Richmond account—established by Seatriumph to receive the entirety of its charter hire payments and used to pay the wages of its crew and other expenses—was the vehicle through which Seatriumph conducted almost all of its business. Nor was the choice of a bank in New York accidental; Seatriumph chose to avail itself of the special advantages of conducting its business through a New York bank and thus deliberately invoked the benefits and protections of New York's laws. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958); *Ford v. Unity Hosp.,* 32 N.Y.2d 464, 299 N.E.2d 659, 663, 346 N.Y.S.2d 238, 243 (1973); *Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 256 N.E.2d 506, 508–509, 308 N.Y.S.2d 337, 341 (1970).

The ready availability of the telephone, telex, and fax makes it possible, from an office in Greece, to use a bank in New York to do all the things that a foreign corporation once needed to send an agent to New York to do. Eileen Pierson, who supervised the Richmond account for Continental Bank, testified at her deposition that she assisted Petropoulos countless times in getting funds quickly to various destinations. (Pierson Dep. at 25). Illustrations of these transactions are provided by the telexes of September 22 and 23, 1988 from Seatriumph's managing agent and a September 22, 1988 telex from Richmond to Pierson, which show that Pierson was instructed to wire $25,000 to the captain of the Katia on behalf of Seatriumph during the vessel's ill-fated voyage. These activities were sufficiently important to Seatriumph that if it had not had the bank account and the bank's personnel in New York to carry them out, its own officers would have had to travel to New York to perform them. Indeed, the New York account was so vital to Seatriumph's business that its managing agent appears to have referred to it as the "owner's New York agent" in its September 22 and 23, 1988 telexes.

While it is a close question, I adhere to the view that the New York Court of Appeals would conclude that the suing parties in this case have made a *prima facie* showing that Seatriumph was "present" in New York for purposes of section 301 jurisdiction. The opinion of the New York Court of Appeals in *Landoil Resources Corp. v. Alexander & Alexander Servs. Inc.*, 77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 739 (1990), supports this conclusion. In that case, the court did not hold that a New York bank account can never ground section 301 jurisdiction. Rather, the court emphasized that the defendant could not deposit or withdraw money from the fund at issue, and that the fund's location in New York was fortuitous. 565 N.E.2d at 491, 563 N.Y.S.2d at 742–43. Here, *prima facie*, Seatriumph had control over its money in Richmond's account in New York. In addition, Seatriumph purposefully chose New York and the New York bank account for the receipt and distribution of the revenue of its business.

Seatriumph has not offered any reason to depart from my earlier conclusion that the New York bank account was in existence at the time of the filing of the third-party complaint. Nor does Seatriumph raise any question about the constitutionality of requiring it to defend this suit in New York.

My earlier opinion did not discuss the other grounds advanced by Kim–Sail for personal jurisdiction over Seatriumph. I now briefly address them.

■ Kim–Sail contends that Kersten is an agent of Seatriumph and Kersten's conduct in negotiating charters and collecting payments from charterers of the Katia is sufficient to ground jurisdiction over Seatriumph. However, the evidence indicates that Kersten acted as an agent for Kim–Sail rather than Seatriumph. As Kim–Sail itself admits, the chartering activities of Kim–Sail were conducted exclusively in the State of New York at Kersten's office in White Plains, New York, and the commercial handling of the voyages under the charter was attended to on Kim–Sail's behalf by Kersten at its office in Manhattan. (Sondheim Aff. ¶¶ 3–4.)

Even if Kersten acted in behalf of Seatriumph in isolated instances, Kim–Sail has failed to make a *prima facie* case that Kersten acted for Seatriumph on a systematic and continuous basis as required for jurisdiction under section 301.

Kim–Sail also relies on the telexes of September 22 and 23, 1988, from Seatriumph's managing agent in Pireaus, as evidence that Seatriumph retained a New York agent. These documents do not explicitly identify this "New York agent." As discussed above, however, these telexes appear to refer to the Continental Bank as Seatriumph's New York agent, and thus confirm the extent to which Pierson, the bank employee in charge of the account, performed the services in behalf of Seatriumph for which an agent in New York would otherwise have been required.

■ The other activities pointed to by Kim–Sail, the Katia's visits to New York and the borrowing of money by Seatriumph from a New York bank, also do not rise to the level of systematic and continuous activities. Accordingly, the New York bank account provides the only basis for exercising personal jurisdiction over Seatriumph in New York under section 301.

### 2. *CPLR § 302(a)(3)*

■ Kim–Sail also contends that personal jurisdiction over Seatriumph is authorized by CPLR § 302(a)(3). That section provides:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

. . . .

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent

course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

Thus, Kim–Sail must make a *prima facie* showing that (1) Seatriumph or its agent committed a tortious act outside of New York; (2) that the tort caused injury to Kim–Sail within New York; (3) that Seatriumph should reasonably have expected the tortious act to have consequences in New York; and (4) that Seatriumph derives substantial revenue from interstate or international commerce. *See American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 432 (2d Cir.1971).

In this case, Kim–Sail has not shown injury in New York. Kim–Sail defines its purported injury as the profits that its New York office will potentially lose from having to pay damages in this suit brought against it in New York by United Rope. Kim–Sail correctly argues that the scope of CPLR § 302(a)(3) is not limited to physical injuries, and economic harm may form the basis of a cognizable claim. But, under section 302(a)(3), an injury, even an economic one, is not deemed to have occurred in New York merely because the plaintiff is domiciled in this state. *American Eutectic Welding*, 439 F.2d at 433 (quoting *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300, 303 (2d Cir.1968) ("Section 302(a)(3) is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state.")); *McGowan v. Smith*, 52 N.Y.2d 268, 419 N.E.2d 321, 324, 437 N.Y.S.2d 643, 646 (1981) (injury not deemed to occur in New York merely because injured party resides in New York). Rather, the place of injury is where "the critical events associated with the dispute took place." *Chemical Bank v. World Hockey Ass'n*, 403 F.Supp. 1374, 1380 (S.D.N.Y. 1975). This usually means that the acts causing the injury must have occurred in New York, *Mayer v. Josiah Wedgwood & Sons*, 601 F.Supp. 1523, 1530 n. 5 (S.D.N.Y. 1985), or that there was a significant loss of New York business, *American Eutectic Welding*, 439 F.2d at 433; *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 385 N.E.2d 1055, 413 N.Y.S.2d 127, 131 (1978). Since Kim–Sail has not shown that the events leading up to the sinking of the Katia occurred in New York or that these events resulted in a loss of Kim–Sail's New York customers, the court's jurisdiction may not be predicated on section 302(a)(3).

Kim–Sail's reliance on *Garbellotto v. Motelindo Compagnie Navegacion, S.A.*, 294 F.Supp. 487 (S.D.N.Y.1969), is misplaced. In that case the defendant shipowner was sued after a longshoreman was physically injured in New York while unloading the owner's vessel. The defendant then impleaded the stevedore whose negligence in Georgia caused the physical injury in New York. Thus *Garbellotto* is distinguishable on its facts. But, in any event, the majority view is that more than a derivative loss of profits in New York must occur before a party is subject to section 302(a)(3).

Kim–Sail also fails to meet another requirement of economic injury as a basis for section 302(a)(3) jurisdiction. There is nothing in this case to suggest that Seatriumph should have expected that the loss of the Katia's cargo on its way to Wisconsin would result in a lawsuit in New York.

### 3. *Consent to Jurisdiction*

■ Finally, Kim–Sail's contention that Seatriumph consented to jurisdiction in New York through a forum selection clause contained in the bills of lading lacks merit. The forum selection clause provides that "[a]ny dispute arising under this Bill of Lading shall be decided in the country where the carrier has his principal place of business." (Lord Ex. 2.) Looking at the document in its entirety, however, it is clear that the clause is meant to refer to the vessel's owner, Seatriumph, and not the charterer, Kim–Sail. Since Seatriumph's principal place of business is Pireaus, Greece, the clause provides no basis for jurisdiction in New York.

### 4. *Motion for Certification*

 Although Seatriumph's motion to dismiss is again denied, its alternative motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is granted. A district court, in its discretion, may certify an otherwise unappealable order where the order (1) involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion, and (3) where an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 23 (2d Cir.1990); *Alpex Computer Corp. v. Nintendo Co.*, No. 86 Civ. 1749, 1991 WL 268631, at *1, 1991 U.S.Dist. LEXIS 17559, at *2 (S.D.N.Y. Dec. 5, 1991). The denial of a motion to dismiss on the ground of lack of *in personam* jurisdiction is properly certifiable pursuant to the statute. *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir.1972); *Donatelli v. National Hockey League*, 893 F.2d 459, 461 (1st Cir.1990). It is my opinion that this order which bases section 301 jurisdiction on a New York bank account satisfies the criteria of section 1292(b).

### CONCLUSION

For the reasons discussed above, Seatriumph's motion to dismiss the third-party complaint for lack of personal jurisdiction is again denied, as is its motion to dismiss United Rope's amended complaint. The motion to certify this interlocutory order to the Second Circuit, pursuant to 28 U.S.C. § 1292(b), is granted.

SO ORDERED.